FREELOVE M. GLINES *v.* LAWRENCE A. AUGER *& a.*

*William N. Rogers* and *Preston B. Smart* (*Mr. Rogers* orally), for the plaintiff.

*Cooper, Hall & Grimes* and *Harvey & McDonald* (*Mr. Cooper* orally), for the defendants.

PAGE, J.   The only question argued is that of the construction of two deeds, one from Richardson to French, July 9, 1897, the other from French to Richardson, of the same date.   Prior to that date, Richardson and French owned in common thirty acres of land on Wolfeboro Neck, bounded northerly by the Horne land and on all other sides by Lake Winnipesaukee.   A part of the thirty acres was

divided by the deeds above mentioned. The deed from Richardson to French made the latter sole owner of a tract whose description followed lines beginning on the shore of the lake at a point twenty-one feet southerly from the wall dividing the Richardson and French land from the Horne land. Thence the northerly line ran north 89 degrees west' one hundred and twenty-three feet, leaving to the north the twenty-one foot strip which is now in controversy. The westerly bound of the tract was another twenty-one foot strip which ran north and south and is now a part of the "Hopewell Road." The deed from Richardson to French conveyed also another tract west of the present "Hopewell Road." After the description of these two tracts these words appear: "It is hereby agreed between the parties of this deed that the land adjoining the first above described parcel and extending to land of said Horne and also the land between the above described parcels shall be used in common as a passway. . . . " These are the words requiring construction. In the deed from French to Richardson, conveying two lots south of those conveyed by Richardson to French and separated from each other by the "Hopewell Road," similar words appear. The defendants contend that these words created only a passway personal to the parties, and not an appurtenance running with the land.

They support their contention largely on the lack of words of inheritance in the clause creating the passway. While that lack would be conclusive in many jurisdictions, it is not conclusive here. *Smith* v. *Furbish*, 68 N. H. 123, 140–146. Compare also, *Low* v. *Streeter*, 66 N. H. 36. While our rule has been criticized elsewhere, it "does have the merit of preventing the intention of the parties from being defeated by a technical rule of law." 17 Am. Jur. 944.

The question of construction is for this court, giving full force to the findings of the Superior Court as to the facts and circumstances surrounding the passing of the two deeds between Richardson and French. What intention did they express in view of a consideration of all parts of the deeds, of the surrounding circumstances and of the practical construction Richardson and French put upon the instruments? Hening's Digest, 473–476.

It is uncontroverted that the only way of approach to the Richardson and French land was by a private right of way over the Horne land, of which the "Hopewell Road" is an extension. Nothing can be clearer than that the second passway mentioned in the two deeds (now a part of the "Hopewell Road") was necessary as a means of access by land to (1) the westerly lot conveyed by Richardson to

French, (2) to both lots conveyed by French to Richardson, and (3) to all the land farther south retained in common ownership by Richardson and French. If not absolutely necessary for access by land to the shore lot conveyed by Richardson to French (now owned in part by the plaintiff and in part by the defendants), it was at least a reasonable convenience to that lot. The necessity and convenience extended not only to Richardson and French, but to their successors in title. While it is recognized that mere convenience, unlike necessity, will not imply a grant of an easement when there are no words of grant (*Goudie* v. *Fisher*, 79 N. H. 424, 425, and cases cited), no reason is seen why mutual convenience may not be considered as one of the surrounding circumstances for the purpose of construing express, but ambiguous, words that purport on their face to grant an easement.

To say that under the circumstances, Richardson and French, by omitting to speak of their heirs and assigns, intended to create a way personal to themselves and not appurtenant to the lands involved in their exchange of deeds, would imply a purpose to create restrictions to the rights of way described that would seriously affect the sale of their respective lands. That intention is not lightly to be ascribed to men in their situation. It would not be a reasonable construction to say that the rights in the "Hopewell Road" do not run with the land. This is practically conceded by the defendants when they argue that the passway in question is not necessary for use by the plaintiff, since she has access by land to her tract south of the defendants' by means of the "Hopewell Road," and to the water because both of her lots, north and south of the defendants', front on the lake. The concession is nearly conclusive on the question before us. The same words in the deeds apply to both passways. If an appurtenance was contemplated as to one, it was fairly contemplated as to the other; and there is nothing to imply a distinction between the two. If other means of ascertaining the construction had failed, the situation would demand that any doubt as to the meaning should be resolved most favorably to the grantee. *Bullen* v. *Runnels*, 2 N. H. 255, 258; *Nutting* v. *Herbert*, 35 N. H. 120, 125; *Sanborn* v. *Clough*, 40 N. H. 316, 330; *Smart* v. *Huckins*, 82 N. H. 342, 349.

The conveyances of 1897 retained the soil of the passway in question in the common ownership of Richardson and French. In 1903, French conveyed to Shaw and Lewis the shore lot he had from Richardson, by a description altered substantially from the earlier description. The north line began, as before, on the lake shore at a

point twenty-one feet southerly from the plaintiff's Horne land, thence ran westerly ninety-two feet and eight inches "by a passageway," and thence by various courses "by said passageway." This description is explained by the fact that at that time the road as used to the "Hopewell Road" crossed the Glines lot (to the north) and entered the "passageway" some more than ninety feet westerly from the lake shore; then, in a southwesterly and southerly curve, made a junction with the "Hopewell Road." Long ago this course was rectified so as not to cross the Glines lot and to enter the "Hopewell Road" on a direct southerly course.

The defendants argue that there was no reason for the plaintiff ever to use any portion of the "passageway" except that part of it in 1903 crossing or following the "passageway" to the "Hopewell Road." But that is not conclusive. It still remains true that the deeds exchanged in 1897 described as a common passway the whole of the twenty-one foot strip, including that part running to the lake shore, and the deed of 1903 called it a passway from the lake. The only question is whether that portion was private to Richardson and French or appurtenant to their lands. It is true also that the deeds to Shaw and Lewis, and from Lewis to Shaw, grant a right of way over the Horne land and "over the right of way first above described," but still the "passageway" runs all the way from the present "Hopewell Road" to the shore.

A deed from the legatees and devisees of Mary Shaw to one Faulkner, October 30, 1929, conveys the French shore lot. Apparently the way to the "Hopewell Road" had then been straightened, for the whole tract is described precisely as in the deed from Richardson to French. It excepts, however, "a strip of land thirty-three (33) feet in width . . . adjacent to the right of way." No right of way is specifically granted by this deed except over the Horne land, but it is bounded northerly by the strip in dispute and westerly by "a passway" (the "Hopewell Road"). There is, however, a general grant of "all the privileges and appurtenances to the same belonging." This could not be fairly construed to exclude any appurtenant rights of way not specifically mentioned. *New Ipswich &c. Factory* v. *Batchelder*, 3 N. H. 190. By subsequent conveyance, worded substantially the same, the 1929 Realty Corporation acquired title to the French shore lot, excepting the thirty-three foot strip off the north part of the lot, described as "adjacent to the right of way." The Realty Corporation deeded in 1938 to the plaintiff by a descrip-

tion based upon a new survey, with "all the privileges and appurtenances."

The Shaw legatees and devisees, in 1939, conveyed the thirty-three foot strip to one Brummitt, the northerly line being twenty-one feet southerly from the Horne land. Brummitt, in 1940, conveyed to the defendants not only the thirty-three foot strip, but also all the land in the twenty-one foot strip running east and west next south of the plaintiff's Horne land. This being the state of the title when this case was first heard in the Superior Court, it was correctly found and ruled that the defendants had no color of title to the soil of the passway in question. The defendants then procured from the successor in title of Richardson and French a deed of the fee of the twenty-one foot strip. This last deed is subject to any right of way that may exist over the strip. The case was reopened for further hearing, and this deed introduced in evidence.

Returning now to the circumstances surrounding the exchange of deeds in 1897, the Court below found, on competent evidence, that "In earlier days this strip was used as a means of getting off the lake by teams in the winter and as an outlet to the lake in the summer." That it was thus useful and convenient, even if not necessary, supports the theory that Richardson and French intended, what the words of their deeds naturally imply, to make this strip a right of way in common. If not dedicated to the use of the plaintiff with respect to her Horne lot, which she testified had a high bank, it was made appurtenant to the tract owned by the plaintiff next south of the defendants'. By description, the latter tract has a bank on the shore, and the use by the owner of the passway in question would be a convenient appurtenance. As far as appears, this twenty-one foot strip is the only naturally convenient way of access to the lake for all parties to this proceeding, who hold title from common ancestors. That bears heavily as a circumstance that throws light on the intention of those common ancestors in title. We see no cause to construe the deeds of 1897 otherwise than was done by the Court below.

*Decree affirmed.*

All concurred.