RALPH C. JOHNSON *& a.* v. ALBERT L. LABOMBARD *& a.*

*Carr & Gifford* (by brief), for the plaintiffs.

*Robert W. Upton* and *John E. Gormley* (*Mr. Gormley* orally), for the defendants.

KENISON, J. The finding and decree of the Court for the plaintiffs does not disclose the basis therefor. Since there is no express grant of an easement of the use of the spring of water to the plaintiffs, the decree must be based on a finding of an easement by implication or by prescription. In this jurisdiction it is well settled that "an easement cannot pass by implication merely on the ground of convenience." *Goudie* v. *Fisher*, 79 N. H. 424, 425, and cases cited. The evidence introduced and offered did not establish that degree of necessity required to establish an easement by implication. "Mere convenience, unlike necessity, will not imply a grant of an easement where there are no words of grant." *Glines* v. *Auger*, 93 N. H. 340, 342. Nor is this a case where mutual convenience is considered in construing ambiguous words in a deed purporting on its face to grant an easement as in *Glines* v. *Auger, supra.*

The deed to Thomas Manchester in 1882 of the leasehold interests in the servient estate reserved the "use of the spring water" to adjoining owners. Plaintiffs contend this is a recognition that Manchester had already acquired the easement to the spring and therefore the grantor did not have the right to convey it. A more logical construction of the reservation is that it was inserted primarily for the protection of the grantor and as a matter of precaution since Manchester was then taking water from the spring. The grantor had no other land which the easement might benefit. No grant to the plaintiffs' predecessor in title can be implied from that reservation.

The single finding of the Court that the use of the spring water by the plaintiffs was continuous from 1863 does not state it was adverse during that period. Assuming, without deciding, that Manchester's use of the spring was adverse from the time he acquired the dominant premises until 1882 when he acquired the leasehold interests in the servient premises, no easement by prescription for twenty years was established. "Since unauthorized use must run for the prescriptive period of twenty years to establish a right, mere inaction by the owner of the fee for less than the period is no evidence of admission of a rightful use. Such inaction is indicative of indifference to a temporary invasion of one's right as much as of recognition of the other

party's claim of right." *Farmington Library Association* v. *Trafton*, 84 N. H. 29, 31, 32. That the use was not under a claim of right is indicated by the fact that Manchester thereafter paid the annual rental to Dartmouth College from 1882 until his death in 1900.

Title to the dominant premises and the leases of the servient premises were held by the heirs of Manchester from 1900 to 1902 and from 1902 by Alice M., Allan B. and Eugene Downs as tenants in common until 1922 when the servient premises were deeded to Allan B. Downs by Dartmouth College. During these periods the leases of the servient premises were acknowledged and not repudiated. Although it does not appear that the rentals were paid in the later years, there is no evidence of a use different or greater than that made by Manchester himself while a lessee. "The tenant's possession, taken under the lease, involves a recognition of the landlord's title in reversion and is consequently not adverse or hostile to the latter." 4 Tiffany, Real Property (3d *ed.*), s. 1178. Thus from 1882 until 1922 the plaintiffs' predecessors in title used the spring on the servient premises as lessees and acquired no prescriptive right therein. *Stevens* v. *Dennett*, 51 N. H. 324, 330. No such right was acquired between 1922 and 1940, which was the last use made of the spring for benefit of the dominant premises, because the use thereof was with the consent or indulgence of Allan B. Downs, then part owner of the dominant and sole owner of the servient premises.

Viewing the evidence and the exhibits as a whole the plaintiffs were entitled to a decree if their continuous use of the spring for more than the prescriptive period was "unexplained." *Jean* v. *Arsenault*, 85 N. H. 72, 75; *Gowen* v. *Swain*, 90 N. H. 383, 386. However, the explanation in this case is that the original owner of the dominant premises paid rental for the servient premises before he had or could acquire a prescriptive easement therein. Thereafter neither his heirs nor assigns perfected any easement to the spring in their own right prior to 1922 when Allan B. Downs, a tenant in common of the dominant premises, purchased the fee to the servient premises from Dartmouth College. The defendants succeeded to this interest in the fee of the servient premises and then controlled the use of the spring free from any valid claims of the plaintiffs or their predecessors in title.

*Exceptions sustained.*

BLANDIN J., did not sit: JOHNSTON, J., dissented: the others concurred.