Hillsborough,
  Dec. 2, 1930.

WILLIAM J. O'BRIEN *v.* MANCHESTER.

*Timothy F. O'Connor* and *Myer Saidel* (*Mr. Saidel* orally), for the plaintiff.

*Omer H. Amyot,* (by brief and orally), for the defendant.

SNOW, J. As a condition to registration of motor vehicles, owners thereof are required by Laws 1919, *c.* 55, *ss.* 1, 5 (See P. L., *c.* 100, *ss.* 10, 14) to obtain from the city or town of their residence a permit, and to pay therefor a fee computed upon the maker's price. Such fees are in the nature of a tax for the use of such city or town. The collection and accounting of such fees, and the remuneration therefor are prescribed by the statute: "The treasurer of each city, or such other person as the city government may designate, and the town clerk of each town shall collect fees for such permits . . . " *Ib.,* *s.* 5; "Each designated city official and each town clerk shall keep an accurate account of the money received by him for said permits and deposit the same in the city or town treasury . . . Town clerks shall be paid on orders drawn on the town treasurer by the selectmen twenty-five cents for each permit issued." *Ib.* 6. A later statute authorizing the issue of permits by county treasurers to persons residing in unincorporated places provides that "Such permit fees shall be for the use of the county in which such unincorporated place is situate, except that the county treasurer shall be entitled to receive therefrom twenty-five cents for each permit issued." Laws 1923, *c.* 38, *s.* 1; P. L., *c.* 100, *s.* 17.

Manchester authorized its "City Clerk" to issue such permits and to collect the fees by vote of its board of mayor and aldermen, on November 18, 1919. The plaintiff was then its city clerk, and was

reëlected to that office for 1920 and 1921. The statute of 1919 became effective on January 1, 1920. During 1920 and 1921 he delivered 25,000 permits of which 19,000 were issued after August 5, 1921. The plaintiff rendered a bill to the board of mayor and aldermen August 3, 1927 for his services at twenty-five cents for each permit issued by him, and on August 5, brought this suit to recover the same. The defendant pleaded the general issue, and the statute of limitations as to the items prior to August 5, 1921.

It is the plaintiff's contention that the words "town clerks" in the last sentence of sec. 6, Laws 1919, were intended to include city officials designated under s. 5, and in support thereof he relies primarily upon P. S., c. 46, s. 2 (P. L., c. 50, s. 2) which provides that "all provisions of statutes, now made or hereafter enacted, relating to towns, shall be understood to apply to cities; and all provisions relating to the selectmen and town clerks of towns shall be construed to apply to the mayor and aldermen and clerks of cities respectively, unless a different intention appears." The defendant denies the application of the latter statute, and claims that the plaintiff's services in issuing the permits were a part of his official duties for which he was remunerated by salary.

The mandate of the legislature as to the definition of terms and the construction of language is to be followed. *Piper* v. *Railroad*, 75 N. H. 435, 442; *Jones* v. *Surprise*, 64 N. H. 243, 245. But the legislative direction here (P. S., c. 46, s. 2), namely, that provisions relating to town clerks shall be construed to apply to city clerks, is subject to the express limitation "unless a different intention appears." It has no application if the statute to be construed contains within itself competent and sufficient evidence of the meaning of its terms. Ordinarily a general construction act is not intended to dispense with the usual rules of interpretation, and is controling only when upon their application the legislative intention is not plain. 25 R. C. L., Statutes, s. 275, p. 1049; *City National Bank* v. *Nelson*, 218 Ala. 90.

The use here of the terms "each designated city official and each town clerk" in directing an accounting, followed in the next sentence of the same paragraph by provision for the remuneration of "town clerks" only, is competent and persuasive evidence of an intention to distinguish between the two officials in respect to compensation. Otherwise there would have been no occasion to mention "city official" in the first sentence. While the maxim *"expressio unius est exclusio alterius,"* as a rule of construction, is of limited usefulness, its application is well recognized "when in the natural association of

ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment." *Taft*, C. J. in *Ford* v. *United States*, 273 U. S. 593, 611; *In re Downer's Estate*, 101 Vt. 167; *Mitchell* v. *Brown*, 18 N. H. 315, 317; *State* v. *Ferguson*, 33 N. H. 424; *French* v. *Company*, 66 N. H. 90, 98. Such is the situation here. The legislative intent appearing in the statute itself, there is no occasion for reading into it the general construction law.

The argument of the plaintiff that such an interpretation imputes to the legislature an intention to impose an onerous duty upon the designated city official without compensation, and thus demonstrates its absurdity, is without merit. The absence of provision for the remuneration of such official carries no such implication. The purpose of the permit being to provide revenue for the city, the expense of the work was logically a city burden. It was to be presumed that suitable provision would be made therefor either by a special appropriation or through an adequate salary. It is a matter of common knowledge that cities have salaried officers whose services are at the disposal of the city, while the clerks of towns as a class are persons engaged in their own business and receive little, if any, salary for their official duties beyond their statutory fees. The relative volume of automobile permits ordinarily issued in towns and cities justifies a difference in remuneration per unit of service to the issuing official. It was not irrational therefore for the legislature to provide a fixed fee for town clerks and leave to the city government the responsibility of handling the business through its designated official, at such cost of service and by such manner of payment therefor, as it saw fit. The fact that a fixed fee to town clerks may result in disproportionate returns as between the clerks of large and small towns does not make illogical the difference in treatment of the subject in towns and cities as classes, which the express and plain words of the statute in their context connote. It is sufficient that there existed a logical basis for fixing the remuneration of the issuing officials in the former class, and for leaving the compensation of those of the latter to be determined by the local authorities on the situation presented in each case.

Under the principle that all statutes upon the same subject-matter are to be considered in interpreting any one of them (*Campton* v. *Plymouth*, 64 N. H. 304, 309) reliance is placed upon Laws 1923, c. 38, *supra*. As the issue of permits to persons resident in unincorporated places imposes upon county treasurers only occasional and

limited services, the provision in such cases for a fixed fee deductible from the fund is of negligible force as a declaration of a general legislative policy. The amount and manner of payment for such services might well call for special treatment.

We have to conclude that the legislature did not intend by Laws 1919, c. 55, s. 5, to provide for a fixed remuneration for designated city officials.

Moreover the plaintiff's rights are concluded by special statute limiting the remuneration of all officers of the city of Manchester to their established salaries. Laws 1897, c. 205. It is there provided that "All fees paid to any officer of the city of Manchester on account of services rendered to any party by said officer in the course of his official duties and which are so paid by virtue of any statute of the state of New Hampshire, shall be by the officer receiving them paid into the city treasury, and all such officials shall receive in lieu thereof, and in full payment for all services rendered by him in his office, such salary as the city councils may from time to time establish for said office." P. S., c. 49 provided that the city clerk, in addition to other enumerated duties, is required by s. 2 to "perform such other services as the mayor and aldermen or city councils may prescribe." By their vote of November 18, the board of mayor and aldermen of Manchester made the issuing of automobile permits and the collection of fees therefor a part of the official duties of the "City Clerk." His remuneration therefor was covered by his salary which, under the terms of the statute of 1897, *supra*, was to be received by him "in full payment for all services rendered by him in his office." It is immaterial here whether the official services rendered by him were worth more or less than his salary. *Stone* v. *Towne*, 67 N. H. 113, 114; *Fernald* v. *Dover*, 70 N. H. 42, 43.

In view of the conclusion reached it is unnecessary to consider the question raised as to the application of the statute of limitations.

In accordance with the record the order here must be

*Judgment for the defendant.*

ALLEN, J., concurred on the second ground only: the others concurred.