Merrimack,
June 1, 1937.

STATE *v.* WILTON RAILROAD CO. *& a.*

*Thomas P. Cheney*, Attorney-General, and *Dudley W. Orr*, Assistant Attorney-General, (*Mr. Orr* orally), for the State.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Demond* orally), for the defendants.

ALLEN, C. J. It was held in *Thompson* v. *Railroad*, 86 N. H. 204, that if a railroad's cessation or curtailment of service is unreasonable, the public service commission has power to order restoration to the extent necessary to establish reasonable service. Since here complete discontinuance of passenger service is reasonable, the questions are limited to the defendants' obligation to furnish any passenger service, and, if the obligation exists, whether the service now furnished is a compliance with it.

The defendants would have the Wilton charter construed as not requiring any service unless there is a reasonable demand for it. They say that legislation should be construed sensibly and not to produce unreasonable results. But this principle is applied only to language whose meaning is doubtful. The requirement of a daily train each way is clear and explicit. Service to meet the public demand was to be provided, and the charter prescribes a minimum test of the demand. To accommodate the public travel "at least" one daily train each way was to be run. A liquidated measure of reasonable service to be in any event maintained is set forth as a term of the charter. It is a legislative determination of minimum requirement, accepted by the grantees of the charter. It is not for the courts to amend the test because it has become too high. The provision is not to be regarded as one productive of unreasonable

results, but is a standard fixed as a measure of the nadir of reasonableness. A formula has been prescribed. That it is not adapted to existing conditions, may be good reason for its disuse, but while the order for its use remains in force, it must be employed. And disuse of it may not be permitted judicially. Its "wisdom and expediency" is not a legal issue.

The sought construction would result in the requirement of minimum service becoming meaningless surplusage, or at most creating a burden of proof by making the requirement a *prima facie* test of such service. The charter is not phrased to ascribe any such meaning to its language. The exception of "unavoidable accidents and contingencies" indicates the extent of the allowance of non-compliance. If daily service of which there is no public need were also intended to be excepted, it would hardly be left to be implied. Specified exceptions usually exclude others. *Howe* v. *Howe*, 87 N. H. 338, 341. "It is clear that significant words in a statute are not to be rejected or rendered ineffectual by construction, but the statute is to be so read as to give every part its due weight." *Jewell* v. *Warner*, 35 N. H. 176, 186. "Every statute should be so construed that it may have a reasonable effect, agreeably to the intent of the legislature, and, if possible, so that no clause, sentence or word, shall be superfluous, void or insignificant." *Tilton* v. *Tilton*, 35 N. H. 430, 432.

Argument is also advanced that the charter provision was repealed by the act (Laws 1911, *c.* 164) creating the Public Service Commission. It is said that the act evidences a broad change of policy in the public control of railroads, and that a section of the act (11 *b*) with its amendment (Laws 1913, *c.* 145, *s.* 11) vests full control of railroad service in the commission. The conclusion is urged that all special regulations of service were repealed, by force of an apparent intent in the legislation that the commission should have a free and unrestricted field in the exercise of its functions in respect to service. Overadequate as well as inadequate service were placed under its authority to correct, it is said, and to give it the scope of control intended for it to have, special enactments prescribing particular service were impliedly repealed.

The authority of *Opinion of the Justices*, 66 N. H. 629 is invoked, the rule of repeal by implication having been therein thought to be applicable to the legislation to which the opinion related. The occasion for employment of the rule must be evidence of convincing force. Admitting the validity of the rule, "the law does not favor" it. *Currier* v. *Railroad*, 48 N. H. 321, 329. "Repeals by implica-

tion are not favored. In order to such repeal there must be such a positive repugnancy as shows that the legislature intend a repeal." *Purinton* v. *Ladd*, 58 N. H. 596, 597. If this may be too strict a statement of the rule for all cases, a repeal is not to be found if any other reasonable construction may avoid it. 25 R. C. L. 918, and cases cited. "Where a special charter is followed by general legislation on the same subject, which does not in terms, or by necessary construction, repeal the particular grant, 'the two are to be deemed to stand together: one as the general law of the land, the other as the law of the particular case'. *State* v. *Stoll*, 17 Wall. 425, 436." *New York &c. Co.* v. *Company*, 65 Conn. 410, 429.

There must at least be a dealing with the same subject-matter in both laws, and the intention that the earlier law is to be no longer operative must appear with cogent force. This was the view taken of the effect of certain general legislation upon previous special legislation in *Opinion of the Justices, supra.* The policy of the general law was regarded as so assertive as to prevail in overcoming the inconsistency of the special law. The general law did not except from its operation the subject-matter of the special law because the subject-matter was identical with that of the general law in all pertinent aspects.

The situation here is not parallel with that in *Opinion of the Justices, supra.* In a sense the general and special laws both deal with the same subject-matter. But it is in different ways and for different purposes. The act creating the Public Service Commission was not so much an exercise of regulatory power as a delegation of such power. It did not affect railroad service except as it vested the commission with authority in respect to it. It did not repeal the enactments (P. L., c. 247, ss. 5, 6) that railroad corporations "are bound by all laws affecting" them and have the general powers of other corporations and, "the special powers granted to them by their charters and the general laws of the state." Nor did it give the commission such full and wide power as the defendants claim. By the act (s. 5) the commission has the duty to keep informed as to all railroads and utilities "not only with respect to the adequacy and accommodation afforded by their service, but also with respect to their compliance with all provisions of law, orders of the commission and charter requirements." Another section of the act (s. 10) provides for hearings on complaints of violations by a railroad "of any provision of law or of the terms and conditions of its franchises or charter or of any order of the commission."

It seems clear that existing charter duties were meant to be retained and continued. No intent to annul such regulatory orders for service as legislation had already prescribed appears in the act. A purpose that standards definitely set up by the legislature might be replaced by others through action of the commission is not evident. So far as legislation is not repealed in a delegation of power by its express terms, it remains in force unless more is shown than that the delegated authority may administer it. The special features of a charter duty are not enough to show an abrogation of the duty by general legislation on the subject, the objectives of which may be maintained without impairment of the duty and which is not inharmonious with the duty. The duty to regulate service is not disturbed by regulations already in force, and legislative tests and measurements of service are not discarded merely because the general duty of prescribing them is delegated. They accompany the delegation as incidental orders to remain in force and to form a part of the general body of regulatory orders, although they are special and exceptional. And they may not be amended or repealed by the delegate unless the delegating act includes authority for such action.

The legislature has ordained that reasonable accommodation for travel shall be furnished by railroads. In respect to the Wilton road, it has set a limit of least permissible accommodation. The Public Service Commission's function is to enforce these duties. But it has no power to change them. While the permitted delegation of legislative power may include authority to deal with statutory regulations in the same manner and to the same extent to which regulations duly enacted by the delegated authority are subject, authority to the Public Service Commission to permit discontinuance has not been granted (*Petition of Boston & Maine Railroad*, 82 N. H. 116; *Thompson* v. *Railroad*, 86 N. H. 204, 205), and the commission therefore has no power to repeal the charter provision, assuming it to be a regulation which delegated authority might be empowered to repeal. The commission, no more than the courts, may act upon the matter according to its views of the propriety of the requirement in the absence of empowering authority. No order of repeal of the charter provision is therefore to be read into the finding that complete cessation of service is reasonable.

The minor point that the charter provision excepts the requirement of trains on Sundays is not thought significant in any bearing upon repeal. The suggestion that religious and sacred observance

of Sundays is a less popular demand to-day than at the time the charter was granted nearly a century ago would logically lead to a repeal of the exception rather than to relief from service on secular days.

There being no inconsistency between the authority vested in the Public Service Commission and the retention of the charter duty, the defendants have failed to make it satisfactorily appear that the provision for week day service has been repealed.

The State concedes that the defendants' only obligation to furnish service for travel is that created by the Wilton's charter, but it contends that by force of the charter the present service is not suitable "for such travelers as may use it." The established fact that there is no reasonable need of any service leads to the conclusion that any service furnished, whatever its character, is suitable. One train a day each way being more than reasonableness demands, the service furnished by such a train is more than adequate. The charter obligation is not construed to require unreasonable service beyond its specific order therefor. Any daily travel service exceeds the public need of accommodation, since no service is sufficient accommodation. The railroad's duty to run a train when there is no real need for it implies no duty to run it in a manner as though the need existed. The less the public demand for service, the less the demand for the convenience of service. It is not thought that the requirement of an extent of service which proves to be unreasonable calls for a quality of service beyond explicit specification. Consistently, the less the demand for extent, the less the demand for quality. The adequacy of quality rises and falls with that of extent. A demand for unreasonable service calls for nothing beyond literal compliance with it. Reduced to lowest terms, the travel of only one passenger a day each way would show no charter obligation to give him the service in time and convenience that would be required if the road were well patronized. While he is one of the public, he is so negligible a part of it that on the ground of any public demand for it he is entitled to no service. This is the effect of the commission's finding. The present service complies with the charter duty in view of the existing conditions, which do away with the need of any service.

If any order is needed to protect the public right as hereby declared, it should be obtained in the court of original jurisdiction.

*Case discharged.*

BRANCH and WOODBURY, JJ., were absent: the others concurred.