ACTING COMMISSIONER OF MENTAL HEALTH *vs.* EVERETT
J. WILLIAMSON, guardian.

Bristol.    October 29, 1952. — March 6, 1953.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Insane Person.    Mental Health.    State Hospital.    Words,* "Under orders
of a court."

The phrase "not under orders of a court" in the first sentence of G. L.
(Ter. Ed.) c. 123, § 96, as amended, refers to all the institutions men-
tioned in that sentence and not merely to the Bridgewater State
Hospital. [53]
The words "under orders of a court" in the first sentence of G. L. (Ter.
Ed.) c. 123, § 96, as amended, mean being under court orders similar
to those issued for the commitment of persons charged with felony
and either not indicted or acquitted by reason of insanity. [56]
An inmate of a State hospital committed thereto by an order of a special
justice of a District Court under G. L. (Ter. Ed.) c. 123, § 77, was
not "under orders of a court" within the meaning of those words in
the first sentence of § 96, as amended. [57]

PETITION, filed in the Probate Court for the county of
Bristol on May 26, 1950.

The case was heard by *Considine,* J.

In this court the case was submitted on briefs.

*Benjamin C. Chester,* for the respondent.

*Francis E. Kelly,* Attorney General, & *Eva G. Silva,*
Assistant Attorney General, for the petitioner.

SPALDING, J.   This is an appeal by a guardian of an insane
person from a decree of a judge of the Probate Court for
Bristol County ordering the payment of $5,508.57 to the
department of mental health for the care and support of
his ward.   The petition in the Probate Court was brought
under the provisions of G. L. (Ter. Ed.) c. 123, § 96, as
amended by St. 1941, c. 398.[1]   It is agreed by the parties

---

[1] "No account of any guardian or conservator of such an inmate [of a
State mental hospital] shall be allowed except after notice to the department
[of mental health] or upon its written assent or waiver of notice.   If the
probate court, upon application of the department, finds that any such

that the ward was committed to the Taunton State Hospital by an order of a special justice of a District Court, that there is sufficient property under the control of the guardian to satisfy the decree, and that the guardian was duly requested to pay the charges assessed and has refused. While the rate set by the department was challenged below, no contention is now made that it was improper.

. The sole question presented by this appeal concerns the construction to be put upon the first sentence of G. L. (Ter. Ed.) c. 123, § 96, the material portions of which are: "The price for the support of inmates of state hospitals . . . and of insane inmates . . . of the Bridgewater state hospital, not under orders of a court, shall be determined by the department at a sum not exceeding ten dollars per week for each person, and may be recovered of such persons . . . if of sufficient ability."

In answering this question it becomes necessary to decide whether the phrase "not under orders of a court" refers to all of the institutions enumerated in the first sentence of § 96 or merely to the Bridgewater hospital. The petitioner urges the narrower scope of the qualifying language, but that argument cannot be accepted. When the sentence in issue is read with the ordinary principles of syntax in mind it is plain that the qualifying phrase refers to all State hospitals. Unless some cogent reason appears to require a contrary conclusion, that reading must be taken as correct. Here no such reason appears. Rather, a consideration of the consequences of the construction urged by the petitioner reinforces the conclusion reached here. A single example will suffice. Under G. L. (Ter. Ed.) c. 123, § 101, a person acquitted by reason of insanity of a charge of murder or manslaughter must be committed by the court to a mental hospital during his natural life. The commitment may be

guardian or conservator having in his possession or under his control property of his ward exceeding five hundred dollars in value, has failed to pay, within three months after receipt of any bill therefor, for the support of his ward at the rate determined by the department under authority of this section, said court may make an order for the payment from the estate of such amount as it may determine."

either to the Bridgewater hospital or to a State hospital. Regardless of the construction to be put upon "under orders of a court," were that phrase to qualify only the reference to the Bridgewater hospital, as the petitioner urges, a person committed to a State hospital under § 101 would be liable for his own support, while another person committed to the Bridgewater hospital under that same section might be supported wholly at the expense of the Commonwealth. Such a construction would make the matter of liability for an inmate's care virtually fortuitous. There is no statutory standard governing the exercise of judicial discretion under § 101; nor is there so much as a suggestion of a legislative purpose for such a distinction. A construction of § 96 leading to that result must be rejected.

But the determination that the phrase "not under orders of a court" qualifies "inmates of state hospitals" does not lead to the conclusion urged by the respondent. The respondent's argument is substantially this: Inasmuch as the ward's commitment to the Taunton State Hospital was by an order of a judge under G. L. (Ter. Ed.) c. 123, § 77, the ward is "under orders of a court" as those words are used in § 96, and neither the ward nor the guardian nor the ward's family can be made to pay the expenses of the ward's support while in the hospital. But if "under orders of a court" were to be construed to refer to all judicial acts which result in the commitment of a person to a State hospital, a relatively small class of inmates would be required to contribute to the expenses of their own support.[1] So to restrict the scope of § 96, we think, would be to defeat its overall purpose.

That purpose is to relieve the Commonwealth of some of the burden of caring for those mentally ill persons who cannot be permitted to remain at liberty. The provisions of § 96 indicate that only those inmates who are "under orders

---

[1] These would be the following: those who entered on a completely voluntary basis under G. L. (Ter. Ed.) c. 123, § 86; mentally ill children entering under § 86A, inserted by St. 1947, c. 517; epileptics admitted under § 87; feeble minded persons received under § 47; and persons accepted for temporary care and detention under §§ 78 and 79.

of a court" will be maintained at the expense of the State; all others must contribute to their support.

It is true that successive amendments of the laws relating to State mental hospitals, since their codification in St. 1909, c. 504, have blurred to some extent the legislative purpose there made clear. But none of the amendments has changed that purpose. By § 82 of the 1909 act, inmates of all State hospitals under the control of the State board of insanity were liable for at least a part of their own support. The distinction drawn was on the basis of the amount they were required to pay; a maximum of $5 per week was set for "state charges." The first significant amendment of this section of the 1909 act was by St. 1915, c. 208, § 1, which extended the definition of "state charges" to include "insane inmates of the state infirmary and insane inmates of the Bridgewater state hospital not under orders of a court." That amplification appears to have been intended to extend the liability imposed by § 82 of the 1909 act to two classes of persons not then under the supervision of the board. A subsequent amendment of § 82 changed not the substance of the support provision, but merely the form by which the liability for an inmate's support might be imposed. It substituted a contractual arrangement between the board and the person or persons liable for the inmate's support for the direct statutory liability created by the original act. It retained the direct statutory liability with respect to "inmates for whose support such a contract is not made, . . . inmates payments for whose support under such contracts are in default and for insane inmates of the state infirmary and insane inmates of the Bridgewater state hospital, not under orders of a court. . . ." St. 1917, c. 133, § 1.

The reversion to the original scheme of the 1909 act by St. 1925, c. 314, and all subsequent amendments and reënactments of that scheme have kept intact the policy that the burden of supporting inmates of State mental hospitals shall be shared by the inmates or those legally responsible for them. The decisive question — and one not free from difficulty — is to determine the meaning of the phrase "un-

der orders of a court." Little or no light on this matter is shed by the provisions of c. 123. Some assistance, however, may be found in G. L. (Ter. Ed.) c. 277, § 16,[1] and c. 278, § 13.[2] These are the only limitations on the extent of the liability imposed by G. L. (Ter. Ed.) c. 123, § 96. In substance they provide that persons who have been charged with felony and either acquitted because insane, or against whom, for that reason, no indictment has been found, shall be supported in any State institution to which they may be committed, at the expense of the Commonwealth.

There appear to be no significant differences in the various commitment procedures authorized by the statutes. In a sense, of course, all commitments, with the exceptions enumerated above, are in pursuance of a court order of some sort, but the phrase "under orders of a court" used in § 96 is of more limited application. In view of the provisions contained in c. 277, § 16, and c. 278, § 13, exempting certain inmates from liability for support we are of opinion that the words "under orders of a court" must be taken to mean in substance: under orders of a court similar to those issued for the commitment of an insane person charged with felony. Obviously the orders here involved are not of that sort.

It may well be that the policy expressed in G. L. (Ter. Ed.)

---

[1] General Laws (Ter. Ed.) c. 277, § 16, reads: "If the grand jury does not indict a person who is held in custody on a charge of crime by reason of his insanity, they shall so certify to the court, which, if satisfied that he is insane, may order him committed to a state hospital, except the Bridgewater state hospital, under such limitations as it may order; or, if the court finds that he has been a criminal or is of vicious tendency, it may order him committed to the Bridgewater state hospital, *and if he is charged with felony his expenses in any such hospital or in any state charitable institution to which he may be transferred shall be paid by the commonwealth*" (emphasis supplied).

[2] General Laws (Ter. Ed.) c. 278, § 13, reads: "If a person charged with crime other than murder or manslaughter is acquitted by the jury by reason of insanity, the jury shall state that fact to the court, which, if satisfied that he is insane, may, under such limitations as it deems proper, order him committed to a state hospital, except the Bridgewater state hospital; but such person, if a male, or any person coming within the provisions of section one hundred or one hundred and one of chapter one hundred and twenty-three, may be committed or removed to Bridgewater state hospital if, in the opinion of the court, he has been a criminal or is of vicious tendency; *and if he has been held on a charge of felony, the expense of his support in any such hospital or in any state charitable institution to which he may be transferred shall be paid by the commonwealth.* The court may at any time revise or revoke the order of commitment as it may deem proper" (emphasis supplied).

c. 277, § 16, and c. 278, § 13, applies also to insane persons committed under G. L. (Ter. Ed.) c. 123, §§ 100, 101, and 103. Neither that issue, however, nor any of the other problems which may conceivably arise under the construction here adopted, need now be decided. For present purposes it is enough to say that the respondent's ward was committed in circumstances which do not obligate the Commonwealth to pay the full expenses of his support. He is not, therefore, held "under orders of a court" as that phrase is used in G. L. (Ter. Ed.) c. 123, § 96. The decree of the Probate Court ordering the respondent to pay to the petitioner $5,508.57 for the support of the ward was therefore correct.

*Decree affirmed.*