340 Mich. 653 (1954)
66 N.W.2d 256
In re LINSTEAD ESTATE.
DEPARTMENT OF REVENUE
v.
LINSTEAD.
Docket No. 24, Calendar No. 46,142.
Supreme Court of Michigan.
Decided October 4, 1954.
Rehearing denied November 29, 1954.
Frank G. Millard, Attorney General, Edmund E. Shepherd, Solicitor General, T. Carl Holbrook and William D. Dexter, Assistants Attorney General, for plaintiff.
North, Allen & Scatterday (Walter P. North, of counsel), for defendants.
SHARPE, J. (dissenting).
This is an appeal from the circuit court of Calhoun county disallowing the *655 claim of the State of Michigan against the estate of Paul Linstead, deceased. The facts have been stipulated as follows:
"Alberta Harrison, who is now a patient in the Kalamazoo State Hospital, is a daughter of Paul Linstead, the above decedent.
"At the time she was admitted to the State hospital, on May 2, 1947, she was over 21 years of age, had been married and divorced, and for several years prior thereto had employment of her own, lived separate and apart from her parents and received no support from them.
"At that time her father was possessed of his home at 30 West Rittenhouse avenue, in Battle Creek, Michigan, some United States defense bonds which he had purchased in 1944 and 1945 when he was still working, the total redemption value of which at the date of his death was $741.50, together with personal and household effects and belongings which were of a very modest nature.
"At that time (May 2, 1947) his wife was living with him and was possessed of no separate estate and was dependent upon him for support, except that from March of 1950 until her death the following September, she drew social security in the amount of $26.11 a month. In the spring following his wife's death, this decedent sold his home on a land contract and rented a room on Pittee street, Battle Creek, Michigan, where he lived until May 9, 1952, and from then until his death, on September 23, 1952, he lived with his son where he shared in the cost of groceries and other living expenses.
"His home was sold on June 8, 1951, for $8,500, with a $2,000 down payment and monthly payments of $65 which he received regularly starting August 1, 1951, and continuing monthly until his death in September of the following year. Most of the down-payment money, exclusive of real-estate commission and sales expense, was put into a savings account in the Michigan National Bank at Battle Creek, where *656 $1,270.59 of it still remained at the date of his death. The land contract balance when he died was $6,029.86.
"The decedent worked at the Grand Trunk Railroad roundhouse at Battle Creek, Michigan, for a number of years prior to his retirement on May 15, 1948, where he earned $66.72 per week, gross pay. After that date he drew a railroad retirement pension of $92.23 per month until his death.
"His daughter remained at the State hospital continuously from May 2, 1947, and was still there at the time her father died. The amounts claimed for her care at the hospital, as stated in the claim now on file in this estate, are admitted to be correct and total $4,483.17."
The issue in this case is whether the estate of Paul Linstead, deceased, is now liable for the above claim in view of the following portion of CLS 1952, § 330.21 (Stat Ann 1953 Cum Supp § 14.811):
"The patient, husband, wife, father, mother, grandfather, grandmother and children of any age, being of sufficient ability, shall jointly and severally be liable for the care and maintenance of any patient."
In determining this question we have in mind that from May 2, 1947, when the daughter was admitted to the State hospital, the deceased was living with his wife and was employed by the Grand Trunk Railroad Company until his retirement in May, 1948, where he earned $66.72 per week; that after said date he drew a retirement pension of $92.23 per month; and that the home was sold on June 8, 1951, for $8,500, with a down payment of $2,000, and monthly payments in the amount of $65.
This cause was heard before the trial court, who entered an order disallowing the claim of the State of Michigan and county of Kent. In an opinion filed *657 the court found as a fact that Paul Linstead, during his lifetime, was not possessed of "sufficient ability," within the meaning of the statute, to reimburse the State of Michigan and county of Kent for any part of the costs for the care and maintenance of deceased's daughter, and that the State must show that Paul Linstead was able to pay during his lifetime before a claim for the State or county can be allowed. In an opinion filed, the court stated:
"After fully considering all of the facts stipulated by the parties it is the determination and finding of this court that the appellees have failed to establish by a preponderance of the evidence that the decedent, Paul Linstead, during his lifetime, to-wit: from May 2, 1947, the date of the daughter's admission to the hospital, to the date of the decedent's death, on September 23, 1952, was at any time during that period of time of sufficient ability to be liable under the meaning of the statute (section 11,[*] CLS 1952, § 330.21 [Stat Ann 1953 Cum Supp § 14.811]) for the maintenance of the said daughter and patient in the State hospital at Kalamazoo, and that therefore the said decedent was not of such `sufficient ability.' * * *
"This court feels that the word `being' used in the statute (section 11 of the `hospital act') is of great significance. Said statute provides that certain relatives being of sufficient ability are jointly and severally liable for a patient's support. The word puts the whole meaning of the sentence in the present tense. That the relative or relatives would be or are liable if as of the time the expenses are paid the said relative or relative are of `sufficient ability,' and such liability, as of the time it arises, becomes fixed and certain. It naturally follows that if there be no liability during life it cannot for the first time come into being after death for (in a sense) a past consideration."
*658 In In re Straight's Estate, 329 Mich 319, we held that proceedings to enforce liability of a father for the care and maintenance of his mentally-incompetent daughter were proper, although no proceedings were taken during the lifetime of the father to establish the fact and extent of his liability. It also appears that upon the death of Judd A. Straight, he left an estate of an approximate value of $74,000. We there said (pp 324, 325):
"The demise of Judd A. Straight did not occur until November, 1946. Under the facts disclosed by this record it cannot be questioned if the proceedings to fix his liability for the care and maintenance of his insane daughter had been brought against him in his lifetime it could not have been successfully resisted. As noted by the quotation above from PA 1923, No 151, § 18a, as added by PA 1939, No 308, the legislature provided that for liability of this character the State's action `may be brought at any time either during the lifetime of the relatives so liable for the cost of such maintenance, care and treatment or after the death of such relatives without any limitation.' This statutory provision did not change the nature or extent of Judd A. Straight's liability. The State's right to enforce a claim of this character against the estate of a person liable therefor was fixed by statute years before the demise of Judd A. Straight. See PA 1923, No 151, § 18a, as added by PA 1939, No 308."[**]
In In re Ryerson's Estate, 338 Mich 641, the State of Michigan filed a claim for reimbursement for funds furnished under the old-age assistance provision of the social welfare act, CL 1948, § 400.34a (Stat Ann 1950 Rev § 16.434[1]). We there said (p 643):
*659 "The language of the classification provisions of the probate code and the social welfare act, as heretofore quoted (CL 1948, § 400.1 et seq. [Stat Ann 1950 Rev § 16.401 et seq.]), contain no ambiguities nor inconsistencies. The language is clear and plain. It provides that the `debt' may be established by the filing of a claim which must be allowed. There is no doubt that the legislature clearly intended, through such process, to finally create a debt within the classification of the probate code."
It should be noted that CLS 1952, § 330.21 (Stat Ann 1953 Cum Supp § 14.811), was not in issue in the Straight or Ryerson Cases, supra. It is before our Court for the first time. The term involved is "being of sufficient ability." It is urged by defendant that at no time during the lifetime of Paul Linstead was there ability to pay for the care and maintenance of his daughter, and that he had no liability for his daughter's care, and therefore no liability could come into existence for the first time after his death and be chargeable against his estate. In our opinion sufficient ability is a condition precedent to attaching liability, but it does not follow that failure of sufficient ability to pay for a part of the time, during which time deceased could become liable, is a cover-all for the entire period. It readily follows that whether Paul Linstead, during his lifetime, had sufficient ability to pay becomes a question of fact.
The trial court found as a fact that from May 2, 1947, the date of the daughter's admission to the hospital, to the date of Paul Linstead's death on September 23, 1952, that Paul Linstead did not have sufficient ability to pay for his daughter's maintenance. We do not think the record supports this conclusion. Paul Linstead sold his home on June 8, 1951, for the sum of $8,500, with a $2,000 down payment, and monthly payments of $65. It also appears *660 that during this period he was receiving a railroad retirement pension of $92.23 per month; that most of the down payment, less real-estate commission and sales expense was placed to his account in a bank; and that at the time of his death his bankbook account showed a balance of $1,270.59. During this period the cost of maintaining the daughter varied from $1.51 to $2.81 per day, or approximately from $45 to $84 per month. In addition, deceased was the owner of some United States defense bonds, the cash value of which was approximately $741.50 at the time of his death. In our opinion the State of Michigan has a claim against the estate of Paul Linstead for such period of time as he had sufficient ability to pay.
The cause should be reversed and remanded to the circuit court to determine this fact and enter judgment accordingly. No costs should be allowed, as the construction of a statute is involved.
CARR and BOYLES, JJ., concurred with SHARPE, J.
BUSHNELL, J.
In Mr. Justice SHARPE'S opinion there appears a quotation from the finding of the trial judge. The matter which is deleted therefrom and which immediately follows the first paragraph of the quotation is of importance. In giving his reasons for the finding that the said decedent was "not of such sufficient ability," the trial judge said:
"This court's answer to the first of questions hereinbefore stated is in the negative. In reaching this factual conclusion the court, among other things, holds that a man in his later years is entitled to and it is wise that he does make some provisions for his maintenance in his old age. To rule otherwise would be to invite further additions to our already overloaded welfare rolls. In this connection it is also interesting to note the considerable amount of property *661 and assets that a man may own and possess and still qualify under the proper statute for old-age assistance (CLS 1952, § 400.27, Stat Ann 1953 Cum Supp § 16.427). Certainly a man should be allowed to possess more of such property and assets before he is required to support someone else for whom under the common law he was not liable."
Further observations were made as follows:
"The statute in question (CLS 1952, § 330.21, Stat Ann 1953 Cum Supp § 14.811) under which the appellees herein seek to impose liability on the estate of Paul Linstead, deceased, is unquestionably in derogation of the common law and must be strictly construed. In relation to this finding of law this court cites with approval the decision, in part, of the supreme court in Commonwealth of Pennsylvania v. Tappen, 215 Minn 22 (9 NW2d 18), to-wit: `Such a statute being in derogation of the common law, must be strictly construed. At common law there was no liability to care for poor relatives, and it must be presumed that the legislative intent was not to extend this liability beyond what was stated.' * * *
"In the present case here under consideration the daughter had passed maturity, was emancipated, married and divorced before she became a patient at the State hospital. Under those facts it appears to this court, presuming that the father raised the daughter up to emancipation and/or maturity, that he was not morally responsible for her support after such maturity and/or emancipation."
The stipulated facts show that the deceased had, in addition to his personal pension, defense bonds totaling $741.50, personal and household effects and belongings of a modest nature, and his home which he sold after his wife's death for $8,500. The claim filed by the State in the probate proceedings shows that during the period in question the cost of maintaining the daughter in the Kalamazoo State Hospital varied from $1.51 to $2.81 per day, or approximately *662 $45 to $84 per month. The median, therefore, would have been $64.50 per month.
Under the conclusion reached by Mr. Justice SHARPE, had the deceased in his lifetime been required to pay $64.50 or more per month, there would have remained from his pension of $92.23 per month the sum of $27.73 or less per month, thus providing less than $1 per day for his own maintenance, which can be assumed to be less than that required for the bare necessities of life. Therefore, he would have been required to resort to the use of his accumulated principal of defense bonds totaling $741.50. His home provided him a place to live and after its sale the income from his land contract, apart from the down payment, possibly would have provided enough for the rental of a suitable habitation.
We, therefore, conclude that the deceased in his lifetime was never in a position where it could be held, as a matter of fact, that he was "of sufficient ability" to provide "for the care and maintenance" of his emancipated, married and divorced daughter.
Furthermore, the problem presented to the trial court admittedly was, as stated by Mr. Justice SHARPE, a "question of fact."
We do not reverse the findings of fact of the trial judge, sitting without a jury, unless the evidence clearly preponderates in the opposite direction. In re Oversmith's Estate, 340 Mich 104.
The judgment is affirmed and the claim of the State is disallowed. Although a construction of the statute is involved, the circumstances of the case, in the light of CL 1948, § 647.25 (Stat Ann 1943 Rev § 27.2543), justify the allowance of costs to appellees, and it is so ordered.
BUTZEL, C.J., and REID, DETHMERS, and KELLY, JJ., concurred with BUSHNELL, J.
NOTES
[*] PA 1923, No 151, § 11, as amended by PA 1949, No 313.  REPORTER.
[**] This section was amended by PA 1949, No 313, and now appears as CLS 1952, § 330.28a (Stat Ann 1953 Cum Supp § 14.818[1]).  REPORTER.