Coos,
No. 5604.

STATE

*v.*

PAUL E. CLINCH, *Ex'r.*

Argued June 5, 1967.
Decided October 31, 1967.

*George S. Pappagianis,* Attorney General, and *R. Peter Shapiro,* Assistant Attorney General ( *Mr. Shapiro* orally ), for the State.

*Jean L. Blais* ( by brief and orally ), for the defendant.

LAMPRON, J. The parties agreed to the following facts: On October 10, 1957, Loretta Belanger was admitted as a patient at the New Hampshire Hospital and has remained confined there continuously to the present time. She is the daughter of the deceased, Lee Clinch, and, when confined, was the wife of Adrien Belanger now residing in Maine. They were never divorced or legally separated.

"On October 10, 1957, the late Lee Clinch was retired from his employment . . . and was 66 years of age. He was a widower. He did not own any real property. His only sources of income consisted of social security benefits in the amount of $108.50 per month from September 1957 through December 1958, and of $116 per month from January 1959 through March 1965, and of benefits under the terms of the Brown Company employees' pension plan, in the amount of . . . [$43.40] per month, plus interest accruals on a savings deposit at City Savings Bank, at Berlin . . . . The amount of said savings deposit was then in the sum of $11,038.30. He was then indebted in the sum of $2,046.60 for the expenses of last sickness and burial of his wife, who had died on September 23, 1957. He did not have any other sources of income, nor did he acquire any other reresources from the 10th day of October 1957, until his death on April 24, 1965."

His estate consisted of household goods of the value of $494.50; a savings account of $9,975.56; insurance policies payable to his estate in the amount of $4,334; cash of $213, making a total estate of $15,017.06.

The total expenses for the care of Loretta Belanger from October 10, 1957 to April 24, 1965, the date of death of Lee Clinch were agreed to be $13,073.67.

The Trial Court ruled as follows on the following questions of law submitted to it on the above agreed facts:

"1. Were the weekly income and other resources of the late Lee Clinch, at any time from October 10, 1957, until he died on April 24, 1965, more than sufficient to provide a reasonable subsistence compatible with decency and health within the meaning of RSA 8:41?" The Court answered in the negative.

"3. If the answer to question No. 1 is in the negative, to what extent, if any, is the executor of the will of the late Lee Clinch liable for the payment of said expenses under the provisions of RSA 8:43?" The Trial Court answered as follows:

"The Executor of the will of the late Lee Clinch is liable for said payments chargeable to the said Lee Clinch during his lifetime and/or ultimately against his estate, only to the extent that the residuary of the estate is sufficient to satisfy the same."

Question No. 2 which was premised on an affirmative answer to question No. 1 was not answered by the Court.

The purpose of statutes such as RSA 8:41-46 and its predecessor R. L., c. 17, ss. 22-25 is to relieve the State of some of the financial burden of caring for those mentally ill. *Acting Com'r of Mental Health* v. *Williamson,* 330 Mass. 52, 54. This is usually accomplished by imposing on the inmates and certain relatives a legal obligation to pay for such support or expenses under certain conditions. 44 C.J.S., Insane Persons, *s.* 75, *pp.* 177-187.

Under R.L., *c.* 17, *ss.* 22-25, the State was obligated to support an insane person "who has no means of support and no relatives of sufficient ability chargeable therewith" ( *s.* 22 ). The State commission of lunacy was to determine whether a patient "or any relative chargeable therewith" was able to bear all or a part of such expense and order part payment if warranted ( *s.* 23 ). The State could recover the expense of support from the inmate himself or the person chargeable without any provision to recover from the estate of either ( *s.* 25 ).

Laws 1951, 250:28-33, now RSA 8:41-46 repealed the above sections. RSA 8:45 directs the boards or commissions to establish a uniform monthly rate for inmate care. They may charge less than the established rate if they find "that a patient or any relative chargeable therewith is able to bear only a portion of the expense incident to his care" ( *s.* 45 ). The relatives chargeable are "a father, mother, son, daughter, husband or wife whose weekly income or other resources are more than sufficient to provide a reasonable subsistence compatible with decency and health" ( *s.* 41 ). A court order requiring such persons to contribute to the support of the inmate can be obtained by the State ( *s.* 42 ). "The state is entitled to recover the expense of care . . . of any patient or inmate . . . from the patient or inmate, if of sufficient ability to pay or his estate, or from those persons legally chargeable with his support or their estate" ( *s.* 43 ).

The Trial Court has ruled in effect that Lee Clinch during his lifetime could not have been ordered by the Superior Court ( *s.* 42 ) to contribute to the support of his daughter because his income did not meet the standards of section 41. The Court,

however, has charged his estate ( *s.* 43 ) with the payment of his daughter's support for that period.

Defendant argues that inasmuch as it has been established that Lee Clinch was never legally chargeable for his daughter's support his estate cannot be charged with it. In other words defendant's position is that an order requiring the estate of a relative of the class enumerated in section 41 is impermissible unless the relative was able to pay the expenses of support at the time they were incurred. We agree with this position.

Laws 1951, 250:28-33 ( now RSA 8:41-46 ) have defined more specifically than did the previous law the class of relatives of the inmate who could be looked to by the State for the expenses of his support and the test to determine their chargeability. The faceless "relatives of sufficient ability chargeable" of R.L., *c.* 17, *s.* 22 have been specified to be "a father, mother, son, daughter, husband or wife whose weekly income or other resources are more than sufficient to provide a reasonable subsistence compatible with decency and health." Such relatives meeting that test are "those persons legally chargeable with his support" from whom "the state is entitled to recover the expense of care, treatment and maintenance" under RSA 8:43.

It is also from the estate of these same "persons legally chargeable with his support" that RSA 8:43 has authorized the State to recover. In other words, the statute establishes as a condition precedent to the recovery of the expenses for the care of an inmate from a relative's estate that the relative, in this case the father, must have been chargeable under the test of RSA 8:41 when those expenses were incurred. See *In re McVey's Estate,* 170 Neb. 362; *In re Linstead Estate,* 340 Mich. 653; *State* v. *Panzeri,* 76 Idaho 211; *State* v. *Stone,* 271 S.W. 2d 741 ( Tex. App. 1954 ); *In re Swope's Estate,* 58 Berks 46 ( Pa. Orph. 1966 ).

The Trial Court has ruled on the agreed facts that, at no time during the period of confinement of his daughter, did Lee Clinch meet "the weekly income and other resources" test ( RSA 8:41 ) which would have made him a person legally chargeable with her support under sections 41 and 43. It follows that his estate was not the estate of a person legally chargeable with her support from which the State is entitled to recover.

*Exception sustained.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting:*

I agree that under RSA 8:43 the State may recover from the estate of a specified relative only if the "weekly income and other resources" of the deceased were "more than sufficient to provide a reasonable subsistence compatible with decency and health" ( *s.* 41 ). There is no suggestion that the deceased did not manage to have a "reasonable subsistence compatible with decency and health" during the entire period during which his daughter was confined to the hospital.

Whatever may have been the probabilities of his being able to do this within his "income or other resources" viewed prospectively, the evidence before us viewed in retrospect establishes the cold, hard fact that he did do it. During the period of his daughter's confinement, his savings account, after payment of his wife's last sickness and funeral expenses, increased from $8,991.70 to $9,975.56. This alone conclusively demonstrates that he had "more than sufficient" income and "other resources" to meet the test of chargeability without considering the availability of whatever cash surrender value his insurance policies had during his lifetime and the $213 cash on hand at his death.

I cannot believe the Legislature intended that in deciding the question of chargeability in a suit against an estate we should ignore what has actually transpired, or that it intended that the State would be barred from recovering under the circumstances of this case. I therefore most respectfully dissent.