Probate Court, Merrimack County
Probate Court, Belknap County
No. 78-082
No. 78-144

IN THE MATTER OF ALBERT GAMBLE
IN THE MATTER OF WAYNE CUMMINGS

November 15, 1978

*Richard Cohen*, guardian ad litem, and *David Wolowitz* (*Mitchell Simon* orally), for respondents Albert Gamble and Wayne Cummings.

*Thomas D. Rath*, attorney general, *Wilbur A. Glahn III*, assistant attorney general (*Deborah J. Cooper*, attorney, orally), for petitioner Raymond Gerbi, superintendent, New Hampshire Hospital.

*Thomas D. Rath*, attorney general (*Deborah J. Cooper*, attorney, orally), for petitioner Jack E. Melton, superintendent, Laconia State School.

DOUGLAS, J. Questions of law concerning the nomination of and payment for guardians for patients at the New Hampshire Hospital and residents of the Laconia State School were certified to this court pursuant to RSA 547:30 by the Merrimack County Probate Court (*Cushing*, J.) and the Belknap County Probate Court (*Burlingame*, J.).

According to the stipulated facts, Albert Gamble is a mentally deficient 44-year-old patient at the New Hampshire Hospital, and has resided in institutions almost continually since 1938. He receives a small federal Supplemental Security Income, and has almost no other personal resources. An inquisition was performed pursuant to RSA 464:1 after the superintendent of the hospital petitioned the probate court for the appointment of a guardian. The inquisitors concluded that Mr. Gamble was incompetent and needed a guardian.

Mr. Cummings, a severely retarded 39-year-old man, has resided at the Laconia State School since 1952. He receives medication daily; he has no income and almost no financial resources, and has been deemed incompetent by inquisitors pursuant to a petition for the appointment of a guardian filed by the superintendent of the school.

Neither Mr. Cummings nor Mr. Gamble has friends or relatives willing and able to serve as his guardian.

■ The first question certified concerns the obligation to obtain guardians for approximately 250–300 patients at the hospital and 500 residents of the school. The State argues that the Merrimack and Belknap County Probate Courts are obligated to obtain guardians when guardianship petitions are filed. We disagree, and hold that the State is required to obtain guardians for incompetent institutionalized persons. The State's obligation is concomitant with its statutory duty to petition the probate court for the appointment of guardians. The rights of patients at the hospital are delineated by RSA 135-B:42, which provides that "[n]o person who is receiving treatment for mental illness shall be deprived of any legal rights." Whenever the administrator of a State institution determines

> that a patient, by reason of his mental illness, is substantially deprived of his capacity to manage his person or property, and said patient does not have a legal guardian, the administrator shall petition the probate court in the county of Merrimack for the appointment of a guardian over said person.

RSA 135-B:42. The administrator of the Laconia State School is required to petition the Probate Court in Belknap County, Merrimack County, or the resident's home county for the appointment of a guardian if the resident is over the age of eighteen and is deemed incompetent. RSA 171-A:10 II (Supp. 1977). In the petition he must recommend the appointment of the person's parents or guardians while the person was a minor; if those persons are incompetent, unable, or unwilling to assume the guardianship, "the supervisor shall nominate another person as guardian who is able and willing" to serve.

The State argues that the superintendent's duty at the hospital under RSA 135-B:42 is simply to commence the guardianship process by petitioning the probate court for the appointment of guardians, and that the superintendent is not required to obtain guardians. Although RSA 171-A:10 II (Supp. 1977) requires the superintendent of the school to nominate a guardian, the State argues that if he cannot obtain one, the probate court must do so. The legal rights of patients would not be protected under the State's interpretation of these statutes.

A person who is legally declared incompetent is substantially deprived of liberty. An incompetent person is reduced to the status of a child and cannot dispose of his property or determine his place of residence. He cannot give his informed consent to medical treatment. The appointed guardian protects the incompetent person's rights by caring for his person and his estate. 2 W. Treat, Probate Law § 827 (1968). The New Hampshire Constitution pt. I, art. 15 guarantees due process to individuals facing a potential deprivation of liberty. *State v. Gregoire*, 118 N.H. 140, 384 A.2d 132 (1978); *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978). The due process guarantee attaches to proceedings to establish mental incompetency, which are civil in nature but "possess a special character of their own." *Hook v. Simes*, 98 N.H. 280, 282, 98 A.2d 165, 167 (1953). Due process requires that an independent decision-maker preside over the guardianship proceeding and when the same individual is charged with both nominating a guardian and determining the guardian's fitness, the incompetent person may be deprived of due process. *Accord, State v. Aubert*, 118 N.H. 739, 393 A.2d 567 (1978). The judge must determine two issues in a guardianship proceeding: first, whether the respondent is incompetent, and second, whether the proposed guardian is suitable. The State, however, argues that a conflict of interest is created when the institution that must consult with a guardian regarding its treatment of the incompetent person also obtains the guardian. This argument ignores the fact that the probate court must be satisfied with the independent judgment and ability of the guardian before appointing him. The court appointment process involves a careful investigation of the fitness of proposed guardians; the guardian selected is responsible to the probate court for any breach of his official trust. 2 W. Treat, *supra* § 821.

Because the probate judge is required to order the inquisition, appoint the inquisitors, and appoint the guardian, the State argues that he must also obtain the guardian to complete the process. This construction of the statutes would impose executive functions on the probate court. Separation of powers between the legislative, executive, and judicial branches of government is a vital part of the State Constitution. N.H. CONST. pt. I, art. 37; *Opinion of the Justices*, 118 N.H. 582, 392 A.2d 125 (1978); *Opinion of the Justices*, 102 N.H. 195, 196, 152 A.2d 878, 879 (1959). We have held that proposed legislation which required the probate court to administer a paupers' relief system was an unconstitutional attempt to impose executive duties on the judiciary. *Opinion of the Justices*, 85 N.H.

562, 154 A.2d 217 (1931). We now hold that the State cannot be permitted to file an incomplete petition for guardianship and delegate its executive responsibility for obtaining guardians to the probate courts.

The rules of statutory construction also compel our holding that the State must obtain and nominate guardians. The superintendent of the school must nominate parents or guardians or, if such persons are unavailable, nominate another who is able and willing. RSA 171-A:10 II (Supp. 1977). We cannot accept the State's argument that its inability to find guardians excuses it from performing the legislative mandate. The express intention of the legislature in the later statute, RSA 171-A:10 (Supp. 1977), therefore controls our interpretation of the language of RSA 135-B:42; the State must obtain and nominate guardians in both cases. See O'Brien v. Manchester, 84 N.H. 492, 152 A. 720 (1930); 2A J. Sutherland, Statutes and Statutory Construction § 51.03 (4th ed. C. Sands 1973). Further, our construction of the statutes to require the State to obtain and nominate guardians is consistent with the general practice of probate courts in New Hampshire. Form 103, the standard form for guardianship petitions, prescribed pursuant to RSA 547:31, requires that the petitioner indicate the name of the proposed guardian.

The second and third questions certified concern liability for costs and fees of guardianship proceedings and guardians. RSA 135-B:42 and RSA 171-A:10 II (Supp. 1977) place the burden of payment on the patient, but make no provision for indigent patients. RSA 126-A:46 (Supp. 1977) provides that the patient's parents, children, or spouse are chargeable with his support. This requirement parallels that of the general support statute. RSA 546-A:2. If a patient has no means of support and no person chargeable for his support, RSA 126-A:54 (Supp. 1977) specifically requires that the patient "shall be supported by the State."

The State presents several arguments to support its position that towns and counties are chargeable for the costs and fees of guardianship proceedings and guardians. RSA ch. 165 and RSA ch. 166 establish a general statutory scheme for paupers assistance in New Hampshire; RSA 166:8 provides that the town or county of settlement is chargeable for support for persons in "any child caring agency, hospital, home for the aged . . . or similar institution. . . ." This general support system, however, does not control the support of patients at State institutions. Specific support obligations for those patients are established by RSA 126-A:44–57 (Supp.

1977). We recognize the rule that a specific law controls in a specific case over a general law. *State v. Wilton R.R. Co.*, 89 N.H. 59, 62, 192 A. 923, 625 (1937); 2A J. Sutherland, Statutes and Statutory Construction § 51.05 (4th ed. C. Sands 1973). We hold that the obligations for support of patients at State institutions are controlled by RSA 126-A:44–57 (Supp. 1977), not RSA chs. 165 and 166.

 RSA 126-A:46 (Supp. 1977) defines persons chargeable for support to include the "father, mother, son, daughter, husband or wife" of the patient. The State argues that "persons" includes towns or counties of settlement. We disagree. No reference is made in the statute to towns or counties as persons chargeable with support. Normally the expression of one thing in a statute implies the exclusion of another. *See Vaillancourt v. Concord Gen. Mut. Ins. Co.*, 117 N.H. 48, 369 A.2d 208 (1977); 2A J. Sutherland, Statutes and Statutory Construction § 47.23–24 (4th ed. C. Sands 1973). Further, this court stated that the purpose of a similar statute, now repealed, concerning the support of inmates of public institutions was "to relieve the State of some of the financial burden of caring for those mentally ill. This is usually accomplished by imposing on the inmates and certain relatives a legal obligation to pay for such support or expense under certain conditions. . . ." *State v. Clinch*, 108 N.H. 302, 304, 234 A.2d 814, 815 (1967).

██ ██ Finally, the State argues that its support obligations include expenses of care, treatment, and maintenance under RSA 126-A:54 (Supp. 1977), but do not include expenses of guardianship proceedings and guardians. The statute states that any patient "*receiving* care, treatment or maintenance . . . who has no means of support . . . shall be supported by the state." RSA 126-A:54 (Supp. 1977) (emphasis added). Although the State institutions do not act as guardians of incompetent persons, guardianship is related to the general care, treatment, and maintenance which those institutions provide. The State must bear these expenses as part of its statutory liability for support. We hold that the State must reasonably compensate persons who contract to perform guardianship services under RSA 135-B:42 and RSA 171-A:10 II (Supp. 1977) when the indigent incompetent patient has no relative chargeable for his support.

*Remanded.*

GRIMES, J., did not sit; the others concurred.