Hillsborough, }
March 5, 1912. }

### HARRINGTON & a., *Ap'ts,* v. MANCHESTER.

A conveyance of lots by reference to a recorded plan, which shows the subdivisions of a tract of land with proposed streets, constitutes an unequivocal dedication of such ways to public use; and in such case a right of passage is vested in the public without a formal acceptance of the dedicated street by the municipal authorities.

A private individual cannot acquire rights against the public by adverse possession.

APPEAL, from a finding of county commissioners awarding the appellants nominal damages for land taken for highway purposes. Trial by the court. Transferred from the September term, 1910, of the superior court by *Wallace,* C. J., on an agreed statement of facts.

November 1, 1872, the Amoskeag Manufacturing Company conveyed to the appellants' grantors a tract of land in Manchester described as follows: "Westerly on Elm street, there measuring one hundred feet; northerly on Grove street, there measuring one hundred feet; easterly on a twenty-foot passageway, there measuring one hundred feet; southerly on Lot No. 1546, there measuring one hundred feet. Said granted premises being known as Lot No. 1851

as shown on said company's plan of lands in Manchester, N. H., and contains ten thousand square feet by measure."

The appellants' grantors immediately enclosed, as a part of the above described land, the southerly half of Grove street bounding thereon and on the passageway, by a fence built on the easterly line of Elm street, the center line of Grove street, and the easterly line of the passageway produced. From the date of the conveyance, the appellants or their grantors have been in actual, open, adverse, uninterrrupted possession of the portion of Grove street so enclosed, using the same for the purposes of their business and always claiming ownership thereto, although conveyances of the lot were made by the appellants' grantors, by deed or mortgage, in the years 1874, 1875, 1880, 1884, 1886, 1887, 1892, 1897, and 1903, and in each case Grove street was named as its northern boundary. In the warranty deed to the appellants Grove street was not named.

No part of Grove street west of Valley Cemetery was laid out as a highway until February 10, 1910, when the board of mayor and aldermen of Manchester, upon petition, laid it out from Elm street to Willow street, the portion enclosed by fence as above stated being included in the lay-out, and one cent damages being awarded to the appellants therefor. If the appellants are entitled to no more than nominal damages, the city is to have judgment for costs; otherwise, the appellants are to have judgment for actual damages to be assessed by a jury and for costs.

*Burnham, Brown, Jones & Warren* and *Taggart, Tuttle, Burroughs & Wyman,* for the appellants.

*John T. Nixon, George A. Wagner,* and *Oscar F. Moreau,* for the appellees.

BINGHAM, J. When the Amoskeag Manufacturing Company platted the lands east and west of the Valley Cemetery, dividing them into a system of lots and proposed streets, and sold the lots, bounding them upon the streets and referring to the plan for further description, they conveyed to the several purchasers, in addition to the lots, the fee in the soil to the center of the street or streets upon which each lot abutted and rights of passage in the other half of such streets (*Manchester* v. *Hodge,* 75 N. H. 166), and such easements or rights of passage in the remaining streets designated upon the plan as were convenient or beneficial, or would be regarded as

such and operated as inducements to the several purchases. *Douglass* v. *Company, ante,* 254.

In addition to conveying these private rights in the proposed streets, the company by thus platting and selling the lots manifested an unequivocal intention to dedicate the streets to public use, and they are therefore to be regarded as dedicated to such use. *Walker* v. *Manchester,* 58 N. H. 438; *Wilkins* v. *Manchester,* 74 N. H. 275; *Trustees* v. *Hoboken,* 33 N. J. Law 13, 21, 22; *Hoboken etc. Co.* v. *Hoboken,* 36 N. J. Law 540, 545; *Atlantic City* v. *Groff,* 64 N. J. Law 527, 528; *Hohokus* v. *Railroad,* 65 N. J. Law 353, 356; *Osterheldt* v. *Philadelphia,* 195 Pa. St. 355; 3 Dill. Mun. Corp. (5th ed.) 1739–1745, note: 13 Cyc. 455, 458, 463 b.

Whether an acceptance of the dedicated streets is necessary to perfect the gift and vest the right of passage in the public, is a matter upon which different conclusions have been reached, due no doubt to a failure to distinguish between what is necessary to vest the right of passage in the public and what is necessary to constitute an acceptance such as will render the city or municipality responsible for the construction and maintenance of the streets. In New Jersey, the courts have kept this distinction in mind and they state their conclusion in this way: "Where the question is whether the way dedicated has become a public highway, so as to impose upon the public authorities a duty to amend or repair, an acceptance on their part is essential to that end. . . . But an acceptance by the public authorities, or public user, is not essential to conclude the owner from his power of retraction, when his intention to abandon his property and dedicate it to public uses is once unequivocally manifested. In that event, the right of the public to appropriate the lands to the public use, at any time when their wants or convenience require it, immediately attaches." *Trustees* v. *Hoboken, supra,* and cases before cited. This holding is an application of the same rule to a dedication of public rights of passage in a proposed street as is ordinarily applied in the case of a gift as between individuals, namely, that its acceptance will be presumed if the gift is beneficial. And in jurisdictions where no obligation is cast upon the municipality for the construction and maintenance of proposed streets until legally established as public highways, there would seem to be no reason why, in the absence of some burdensome condition imposed by the donor, the dedicated public right of passage over the streets should not be regarded as beneficial and an acceptance presumed. As a rule, it would clearly be beneficial;

for upon the establishment of public highways over the proposed streets, the public would be relieved from the payment of land damages.

In England, there seems to be a diversity of opinion as to whether an acceptance is even necessary to charge a parish or municipality with the duty of constructing and maintaining a way dedicated to public use, the later holdings being that it is not. *Rex* v. *Leake,* 5 B. & Ad. 469; *State* v. *New Boston,* 11 N. H. 407, 413; *Stevens* v. *Nashua,* 46 N. H. 192; *State* v. *Bradbury,* 40 Me. 154. But in this country it has generally been held that there must be an acceptance, express or implied, by the public authorities to charge a city or town. See *State* v. *Atherton,* 16 N. H. 203, 209; *State* v. *Bradbury,* 40 Me. 154.

In this state, prior to 1842, the selectmen, in whom was vested the power to lay out highways, could accept a way dedicated to the public "by a direct record of acceptance (*Hopkins* v. *Crombie,* 4 N. H. 520, 523), or by repairs, or setting up of guide posts, or any other official act of recognition"; and a town, upon which was cast the burden of repair, could also accept. *State* v. *Atherton,* 16 N. H. 203, 210. But in 1842 it was enacted that "no highway that has not been laid out agreeably to statute law shall be deemed a public highway, unless the same has been used by the public for a term of time not less than twenty years" (R. S., c. 53, s. 7); and since then it has been held that a way dedicated to public travel could not be accepted so as to render a city or municipality liable for its construction and maintenance, or for accidents happening upon it, except by being laid out by public authority in accordance with the statute, or by being used for public travel for a period of twenty years. *Stevens* v. *Nashua,* 46 N. H. 192; *Ruland* v. *So. Newmarket,* 59 N. H. 291; *Harriman* v. *Moore,* 74 N. H. 277; P. S., c. 67, s. 1. In other words, the statute has altered the law of dedication of ways to public travel only so far as it relates to the character of proof necessary to establish an acceptance by public authority that will impose upon a city or municipality the duty of constructing and maintaining the way, and that will render it liable for accidents to travelers thereon due to its failure in that regard.

Whether the power is vested in any body short of the legislature to release the dedicated lands and discharge the public servitude, we need not inquire. *South Amboy* v. *Railroad,* 66 N. J. Law 623, 625; *Quicksall* v. *Philadelphia,* 177 Pa. St. 301, 304; *Pittsburgh* v. *Company,* 194 Pa. St. 318, 323; *Osterheldt* v. *Philadelphia,* 195 Pa.

St. 355. It is certain that the public right in Grove street was not lost by the adverse use of the southerly half of the street by the appellants and their grantors for twenty years. *Manchester* v. *Hodge,* 74 N. H. 468, 470; *Collins* v. *Howard,* 65 N. H. 190, 192; *Thompson* v. *Major,* 58 N. H. 242; *State* v. *Company,* 49 N. H. 240; Laws 1862, *c.* 2622.

The right of passage in Grove street having vested in the public when the street was dedicated to public use, the appellants were not entitled to an award of damages when the public authorities laid out the street as a public highway. According to the agreement of the parties the order is,

*Judgment for the appellees for costs.*

All concurred.