Coos
No. 78-112

ROSAIRE J. DUCHESNAYE

v.

CHARLES SILVA & a.

October 30, 1978

*Edward J. Reichert*, of Gorham, by brief and orally, for the plaintiff.

*Bergeron & Hanson*, of Berlin (*Arnold P. Hanson, Jr.*, orally), for the defendant.

GRIMES, J. This action to quiet title concerns fee and easement rights in an undeveloped street. Two issues are presented: first, whether the trial court erred in finding that the plaintiff has a fee interest in one-half of an undeveloped access street which borders his subdivision lot, and second, whether the court erred in finding that defendant Silva, a subsequent purchaser of abutting lots, has an implied easement to the entire street as an access to his land. We answer both questions in the negative and affirm the lower court's rulings.

In 1904, the Brown Company (the company), then the Berlin Mills Company, duly recorded in the Coos County Registry of Deeds a plan or subdivision plat known as the "Cascade Addition, Plan No. 1 and 2." The Cascade Plan depicts an area within the city of Berlin containing some 300 lots divided into more than 30 blocks by a number of 50-foot access streets. As illustrated on the plat, these streets were designed to provide each lot with access to Western Avenue, a well-developed public street abutting much of the plan's eastern length. One of these access streets, known as "Walnut Street," is the subject of the present dispute.

Plaintiff purchased two adjoining lots from the company in 1950; these lots, when joined as one property, abut both Western Avenue and Walnut Street. Plaintiff received a warranty deed which recited only that it conveyed "Lots 1 and 2 in Block 23" of the Cascade Plan, and that the conveyance was "subject to any and all rights the City of Berlin may have in the above-described premises for street purposes." A copy of the pertinent part of the plan was attached to the deed.

Plaintiff's property is but one of ten "Cascade lots" bordering Walnut Street. The property directly across Walnut Street from the plaintiff's land had been purchased from the company in 1949 by a Mr. Labonte. In 1967, Labonte sold the lot to a Mr. Leclerc. The deeds used in both the company-to-Labonte sale and the Labonte-to-Leclerc sale were similar to that used in the company-to-Duchesnaye (the plaintiff) sale; that is, the property description was by lot and block number only.

Following the sale to plaintiff the company made no further sales in the Walnut Street area until 1972. In that year, the company, by quitclaim deed, conveyed to the defendant Silva the entire remainder of block 22, most of block 21, a portion of block 20, "and all the land designated as proposed streets," including Linden, Walnut, and

Wentworth Streets. Rights were reserved both for the city of Berlin for street purposes and for utility easements. Shortly thereafter, this dispute arose as to the respective rights of the parties in Walnut Street.

Both plaintiff and defendant Silva agree that the 1904 filing of the Cascade Plan constituted an offer of dedication of the proposed streets to the city of Berlin. *Cf. Douglass v. Belknap Springs Land Co.*, 76 N.H. 254, 257, 81 A. 1086, 1088 (1911). *See also Stozenski v. Borough of Forty Fort*, 456 Pa. 5, 317 A.2d 602 (1974); 23 Am. Jur. 2d *Dedication* § 23 (1965). Both parties also agree that the sales of lots by reference to the recorded plan in 1944 and 1950 constituted offers of dedication. *See Harrington v. Manchester*, 76 N.H. 347, 82 A. 716 (1912). It is undisputed, however, that the city failed to accept these offers of dedication within the time limits established by RSA 238:7. Since the city's interest is not now before us, future references to "the defendant" should be read to refer only to Mr. Silva.

Plaintiff's petition alleged that by reason of this failure of dedication, ownership of the disputed portion of Walnut Street reverted to himself and Mr. Leclerc. In addition, plaintiff alleged that his continuous use of the street under a claim of right gave him title by adverse possession. Plaintiff's prayer asked that the court specifically foreclose any rights in the defendant and the city of Berlin to develop the portion of Walnut Street that he claims. The defendant answered that he owned the fee in the street, subject only to private easements of access for the benefit of abutting landowners. Defendant's prayer asked that it be decreed that he has the full right to develop all of Walnut Street for street purposes.

A trial before the Superior Court (*Brock*, J.) resulted in a finding that the plaintiff has fee simple title to the one-half of Walnut Street abutting his land. The court also found that the defendant has an "implied easement in such property, and has the right to develop such property for his and others' use for the purpose of ingress and egress." Both plaintiff and defendant took exceptions to these findings. All exceptions plus an agreed statement of facts were reserved and transferred to this Court (*Brock*, J.). The city of Berlin did not appear and does not contest that it has no rights in the disputed property.

### I. *Ownership of Walnut Street*

In finding that plaintiff owns one-half of Walnut Street where it abuts his property, the trial court relied upon our decisions

in *Luneau v. MacDonald*, 103 N.H. 273, 173 A.2d 44 (1961), and *Gagnon v. Moreau*, 107 N.H. 507, 225 A.2d 924 (1967). These decisions make it clear that a conveyance of property bounded by a street or highway normally conveys title to the center of the boundary street, unless clearly contrary language appears in the deed. *Luneau v. MacDonald*, 103 N.H. at 276, 173 A.2d at 46. *See also Holbrook v. Dow, Inc.*, 116 N.H. 701, 704, 366 A.2d 476, 479 (1976); Annot., 49 A.L.R.2d 982, 984–97 (1956). We have stated:

> It is familiar law that where lots are sold by reference to a recorded plat or plan showing existing or proposed streets which constitute boundaries of the lots, a conveyance ordinarily operates to convey to the grantee the fee simple to land underlying adjoining streets and rights of way to the center line thereof. . . .

*Gagnon v. Moreau*, 107 N.H. at 509, 225 A.2d at 925–26 (1967). *See also Sawtelle v. Tatone*, 105 N.H. 398, 201 A.2d 111 (1964).

■ We are mindful of the fact that each of the above-cited cases involved deeds which included both plat references and specific mention of the boundary streets. We see no reason, however, for a different rule where, as in this instance, the deed refers with particularity to a recorded map or plat. In such a case the grantor adopts and incorporates the map as a part of the deed, and the boundaries set forth on the map should be construed as if written in the deed. *Suburban Land Co. v. Billerica*, 314 Mass. 184, 189, 49 N.E.2d 1012, 1015 (1943); *Loud v. Brooks*, 241 Mich. 452, 454, 217 N.W. 34, 35 (1928); *Henry v. Bd. of Trustees*, 207 Ky. 846, 847, 270 S.W. 476, 477 (1925). *See also* Annot., 49 A.L.R.2d 982, 992–93 (1956). This is the majority and, in our view, the sounder rule.

■ ■ The defendant points to certain language in plaintiff's deed in an attempt to show an intent contrary to the presumed intent to convey to the center line of Walnut Street. Defendant is correct in his assertion that this oft-quoted presumption can be rebutted; however, in this State, rebuttal requires a "clear and unequivocal declaration" of a contrary intent in the deed. *Luneau v. MacDonald*, 103 N.H. at 276, 173 A.2d at 46. The language in the deed that the conveyance to plaintiff was "subject to any and all rights the City of Berlin may have . . . for street purposes" is not a clear and unequivocal declaration. The quoted language merely confirms the fact that the access street had been offered for dedication. An offer of dedication is not inconsistent with an intent to convey a fee out to the

center line. *United States v. Certain Land in the City of Portsmouth*, 247 F. Supp. 932 (D.N.H. 1965); *Lake Garda Improv. Ass'n v. Lake Garda Co.*, 135 Conn. 240, 63 A.2d 145 (1948); 26 C.J.S. *Dedication* § 50 (1956).

The trial court correctly found that plaintiff owns the fee in one-half of the disputed portion of Walnut Street. We find it unnecessary to address plaintiff's theories of title by adverse possession and the reversion of title upon a failure of dedication.

II. *Implied Easement for Access*

■ The trial court found that defendant has an implied easement in the whole of Walnut Street for purposes of access to his property. This finding is in accord with our decisions in *Sawtelle v. Tatone*, 105 N.H. 398, 201 A.2d 111 (1964), and *Gagnon v. Moreau*, 107 N.H. 507, 225 A.2d 924 (1967). There was ample evidence before the court from which it could find an implied easement for access in favor of each lot along Walnut Street. First, each lot was sold with reference to the Cascade Plan. Second, that plan put all buyers on notice that Walnut Street was designed to be the main access to Western Avenue in the Block 22–23 area. Finally, plaintiff's deed specifically mentions possible rights in the city for "street purposes." We cannot say on the basis of the evidence before us that the trial court erred in finding an implied easement. *See Regan v. Hovanian*, 115 N.H. 40, 332 A.2d 177 (1975); *Wolfe v. City of Providence*, 77 R.I. 192, 201–02, 74 A.2d 843, 848–49 (1950); *Stozenski v. Borough of Forty Fort*, 456, Pa. 5, 317 A.2d 602 (1974); 3 R. Powell, Real Property ¶ 409 (1978).

Plaintiff excepts to the trial court's ruling on two grounds. Plaintiff's first argument is that RSA 238:7 precludes any implied easement in defendant. This is an overbroad reading of the statute. RSA 238:7 applies only to municipalities; it has no application to private parties claiming appurtenant easements. The statute deprives the public of any independent right it has in the road. The defendant, however, has " 'the right to insist not only on the use of the [road] . . . but that the public shall have the same right to make use of it. All of which is intended as a benefit to the [property] owners and not as an independent right in the public.' " *Stozenski v. Borough of Forty Fort*, 456 Pa. at 10, 317 A.2d at 606, *quoting Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. Co.*, 240 Pa. 519, 87 A. 968 (1913); *cf., Sawtelle v. Tatone*, 105 N.H. 398, 201 A.2d 111 (1964).

Plaintiff also argues that because defendant purchased his lots after the plaintiff, no easement can run in the defendant's favor. It is settled law that implied easements arise, if at all, at the time of the original split of the dominant and servient estates. *Gagnon v. Moreau*, 107 N.H. 507, 225 A.2d 924 (1967). In the present case, the implied easement over plaintiff's portion of Walnut Street commenced the moment plaintiff took ownership of his lot. It cannot be disputed that this easement is appurtenant. *Glines v. Auger*, 93 N.H. 340, 42 A.2d 219 (1945). As an incident of the land it benefits, the easement follows the land; hence when defendant purchased his lots he also purchased the easement appurtenant to those lots. Mere nonuse of the easement up to this time does not defeat the defendant's right to use the street, as nonuse by itself does not terminate an easement. *Bruchhausen v. Walton*, 111 N.H. 98, 276 A.2d 6 (1971); *Gagnon v. Carrier*, 96 N.H. 409, 77 A.2d 868 (1951).

The trial court ruled also that the defendant has the right to develop Walnut Street from end-to-end for his and others' use for the purpose of going to and from his property. This ruling is correct. This result does not, as plaintiff claims, circumvent the intent of RSA 238:7. Rather, it recites the type of use which is reasonable for defendant's easement. *Cf. Sawtelle v. Tatone*, 105 N.H. at 405–06, 201 A.2d at 117. *See also Stozenski v. Borough of Forty Fort*, 456 Pa. 5, 317 A.2d 602 (1974).

*Exceptions overruled.*

BROCK, J., did not sit; the others concurred.