398

Rockingham
No. 84-276

JAMES R. POLIZZO *& a.*

v.

TOWN OF HAMPTON *& a.*

April 18, 1985

*Tetler, Salomon, Gillis & DeKavis*, of Hampton (*Craig N. Salomon* on the brief and orally), for the plaintiffs.

*Shaines, Madrigan & McEachern*, of Portsmouth (*John H. McEachern* on the brief and orally), for the Town of Hampton.

*Seth M. Junkins*, of Hampton, by brief and orally, for the defendant Glen Hill, Incorporated, and the intervenor, Paul V. Sicard.

BROCK, J.  At issue in this case is the legal status of a "paper street." The street was plotted on the plan of a subdivision which was approved by the Hampton Planning Board on February 11, 1960. The land in question, however, has never been developed or used as a street. It is undisputed that fee title to the land is in the plaintiffs, whose properties abut the street on either side. *See Duchesnaye v. Silva*, 118 N.H. 728, 732, 394 A.2d 59, 61 (1978).

The plaintiffs argue that all of the other parties' rights in the street have been extinguished under RSA 231:51. The defendants and the intervenor claim rights in the street under former RSA 36:29 (repealed effective January 1, 1984), which they argue conflicts with and supersedes RSA 231:51.

The plaintiffs filed a petition to quiet title to the land, and a Master (*R. Peter Shapiro*, Esq.) recommended a decree in their favor. The Superior Court (*Temple*, J.) approved the master's report. A motion for reconsideration by one of the defendants and the intervenor was denied by *Gray*, J. Because our interpretation of the relevant statutes differs from the master's, we vacate the trial court's judgment and remand for additional finding of facts.

On the accompanying sketch map, the lots numbered 17 through 21 are on the eastern edge of the Glen Hill subdivision in Hampton. Lots 19 and 20 are owned by the plaintiffs in this case—the Polizzos and the Uphams, respectively. The land abutting those lots on the east is owned by the intervenor, Paul V. Sicard. It has never been a part of the subdivision.

The land in dispute is the shaded area between lots 19 and 20. The subdivision regulations in force in 1960 required that a fifty-foot-wide right of way be plotted in that location. It is undisputed that,

since the subdivision plan was approved by the planning board, the land has never been developed or used as a street.

Although it appears that the Sicard property has no access to a public right of way except through the fifty-foot strip, the record indicates that Mr. Sicard and his predecessors in title have invariably used a narrow, private right of way for access to their property. Thus it appears that a ruling foreclosing future development of the fifty-foot strip as a street would not "land-lock" Mr. Sicard, but would prevent him from subdividing his property under current regulations.

The plaintiffs brought this action in April, 1983, seeking to quiet title to the fifty-foot strip. The Polizzos and the Uphams each claimed fee title to that half of the strip abutting their respective properties, free of all right, title and interest of the defendants (the town and the developer) or the intervenor (Mr. Sicard). The plaintiffs' claim was founded on RSA 231:51, which reads:

> "Dedicated Ways. Any street, lane or alley within this state which has been dedicated to public use by being drawn or shown upon a plan of lands platted by the owner, and the sale of lots in accordance with such plan, shall be released and discharged from all public servitude unless such street, land or alley shall be opened, built or used for public travel within 20 years from such dedication."

The defendants and the intervenor argued that RSA 231:51 was superseded for purposes of this case by the provisions of the former RSA chapter 36, which was enacted later than RSA 231:51. RSA chapter 36 (since replaced by RSA chapter 674 (Supp. 1983)) provided, among other things, that planning boards may be authorized by a municipality to regulate the subdivision of land. RSA 36:19 *et seq.* (replaced by RSA 674:35 *et seq.* (Supp. 1983), effective January 1, 1984).

Great stress was laid at trial on the former RSA 36:29, which read as follows:

> "Status of Existing Platting Statutes. From and after the time when a planning board shall expressly have acquired platting jurisdiction in the manner described herein such jurisdiction shall be exclusive and all statutory control over plats or subdivisions of land granted by other statutes shall so far as is in harmony with the provisions hereof be deemed transferred to the planning board as herein authorized and described, and, so far as the regulations of such statutes are inconsistent with such of the powers herein granted as have expressly by ordinance

been adopted by a municipality and wherever made available to a planning board according to the provisions hereof, they are hereby declared to have no application, force or effect so long as the said powers conferred hereby shall continue to be exercised by a municipality."

The defendants and intervenor have argued, both at trial and in this appeal, that this broad grant of jurisdiction should be read in conjunction with the former RSA 36:21, which permitted planning boards to adopt regulations "for the proper arrangement and co-ordination of streets within subdivisions in relation to other existing or planned streets . . . ."

Together, the argument runs, these provisions imply that approval of a subdivision plan creates in the town a "reservation of rights" in all streets plotted on that plan, whether or not those streets are developed within 20 years. To hold otherwise, it is argued, would defeat the purpose of the planning board statutes; namely, to permit long-range planning of a town's growth and development. *See* former RSA 36:10, :13 and :14.

The master ruled "that RSA 231:51 is not in and of itself inconsistent with the powers exercised by the Hampton Planning Board." He suggested that the board could have avoided the application of RSA 231:51 simply by stating (when it approved the plan) that RSA 231:51 would not apply. He then held that, because the board had not done this, and because the strip had never been opened or used for public travel, all rights to the strip in the general public and the town had been dissolved after 20 years.

We do not read the statutes to mean that the planning board, acting alone, has the power to prevent the application of RSA 231:51 to a street like this one. Our analysis begins with the concept around which RSA 231:51 revolves—that of dedication and acceptance.

A public highway may be created in any one of four ways: (1) through the taking of land by eminent domain and the laying out of a highway by some governmental authority; (2) through the construction of a road on public land; (3) through twenty years of use by the public; or (4) by dedication and acceptance. RSA 229:1.

An offer of dedication of a street may be made in several ways, among them by the filing of a subdivision plan with a planning board. *See generally* 2 THOMPSON ON REAL PROPERTY § 369 (1980 replacement vol.). *Acceptance* of a dedicated street is a discrete event, with broad legal implications. It turns the street into a public highway, and thereby renders the accepting city or town "liable for its construction and maintenance, or for accidents hap-

pening upon it . . . ." *Harrington v. Manchester*, 76 N.H. 347, 350, 82 A. 716, 718 (1912).

*Harrington* held that, under the law in effect at that time, acceptance could occur only through the use of a street by the public for twenty years, or "by being laid out by public authority in accordance with the statute." *Id.* The case's crucial holding, however, was that an offer of dedication created a permanently vested right in the town to accept the street. *Id.* at 350–51, 82 A. at 718. In *Harrington*, acceptance did not occur until almost thirty-eight years after the offer of dedication.

The legislature enacted RSA 231:51 in 1913, only one year after *Harrington*, and evidently in response to it. The legislature's clear intent was to create a 20-year time limit after which a dedicated street could no longer be accepted or used without the consent of the fee owners. *See, e.g., Duchesnaye v. Silva*, 118 N.H. at 731, 394 A.2d at 60; *Young v. Prendiville*, 112 N.H. 190, 192, 291 A.2d 602, 603 (1972).

RSA chapter 36 was enacted in 1935. Laws 1935, ch. 55. Among its provisions was the following:

> "36:24 Status of Plats Approved. Every plat approved by the planning board shall, by virtue of such approval, be deemed to be an amendment of or an addition to or a detail of the official map and a part thereof. Approval of a plat shall not be deemed to constitute or effect an acceptance by the municipality or the public of the dedication of any street or other ground or open space shown upon the plat."

Laws 1935, 55:24. Another section, RSA 36:25, provided that a municipality could not accept a street without planning board approval, except by a two-thirds vote of the council (in a city) or by majority vote of a town meeting. Laws 1935, 55:25.

Finally, in 1945, RSA 229:1 was amended to provide that a dedicated street would become a public highway when it was "accepted" by a city or town, independent of a laying out by public authority or twenty years' use by the public. Laws 1945, 188:1. We have construed this to mean that a mere formal acceptance by the municipality (*i.e.*, the city council or town meeting) will suffice. *See Perrotto v. Claremont*, 101 N.H. 267, 268, 140 A.2d 576, 577 (1958).

It is axiomatic that "all statutes upon the same subject-matter are to be considered in interpreting any one of them . . . ." *O'Brien v. Manchester*, 84 N.H. 492, 495, 152 A. 720, 722 (1930). By reason of the legislative history noted above, we interpret the phrase "opened, built, or used for public travel" in RSA 231:51 to refer to

acceptance, or use which may ripen into acceptance. We will accordingly construe that phrase broadly to include later statutory changes in the meaning of acceptance. To hold otherwise would defeat the purpose of those changes.

■ In this case, the purpose of the 1945 amendment to RSA 229:1—to enable municipalities to accept dedicated streets with only a formal vote—would be defeated if we construed RSA 231:51 to require some additional action. The reversion of rights contemplated by RSA 231:51 was meant to occur only when a municipality failed for twenty years to assume the responsibilities that accompany acceptance of a street, and when there was no public use that could eventually ripen into acceptance. Because a formal vote of acceptance constitutes such an assumption of responsibilities, it satisfies the requirements of RSA 231:51.

■ On the other hand, the former RSA 36:24 expressly states that approval of a subdivision plan by a planning board *does not* constitute acceptance of any street shown on the plan. Thus, the power to avoid application of RSA 231:51 was not one of the powers "herein granted" to planning boards under former RSA 36:29, and the latter statute cannot preempt application of RSA 231:51 to a street that has never been accepted by the municipality.

Whether an acceptance occurred in this case is not clear from the record, but it appears unlikely. The master made no specific reference to the subject. He did refer to an "Agreed Statement of Facts" submitted by the parties, which includes the following paragraph by reference:

"9. It is not clear from public records whether or not the dedication of the strip was accepted by the Town of Hampton.

A. Carolan Avenue was accepted, according to records in the office of the Hampton Town Manager on August 11, 1961.

B. The Town of Hampton has not assessed or taxed the strip since 1960, based upon the best records available at the Assessors Office.

C. The subdivision regulations of the Town of Hampton, in effect at the time of approval of the plan, provide (Section III D.) that approval of the plot does not constitute an acceptance of the dedication.

D. Town officials have indicated that the ordinance to the contrary notwithstanding the Town, de facto, accepted such dedication upon approval at all times relevant hereto."

■ Because the ordinance referred to in paragraph 9(C) was merely a repetition of the second sentence of former RSA 36:24, it is clear that approval by the planning board could not constitute acceptance. Because it is undisputed that the strip was never opened or used as a street, acceptance could only have occurred through a formal vote by the Hampton Town Meeting prior to February 11, 1980. The case is remanded to the superior court for the limited purpose of making a finding whether there was such a formal acceptance. If there was, RSA 231:51 cannot be applied, under our construction of the statute, to defeat the town's rights, and the plaintiffs' petition should be denied. If there was no formal acceptance, RSA 231:51 applies and the petition should be granted.

■ Finally, the award of costs to the plaintiffs under RSA 498:5-c was clear error. That statute permits the award of costs only to *defendants* who claim no title or interest in disputed property.

Because it is not an issue in this case, we need not decide the extent of a town's responsibilities regarding a dedicated street that is accepted solely for purposes of possible future development. We note, however, that the current statutory law leaves the question in some doubt, and we commend it to the attention of the legislature.

*Vacated and remanded.*

All concurred.