Arliss J. HILL, Verona A. Johnson, Trustee William A. Johnson Revocable Living Trust and Carol J. Hennum, Trustee Carol J. Hennum Living Trust d/b/a Mountain Valley Mall Associates, Plaintiffs, Appellants,

v.

TOWN OF CONWAY, Defendant, Appellee.

No. 99–1019.

United States Court of Appeals, First Circuit.

Submitted May 19, 1999.

Decided Oct. 4, 1999.

Randall F. Cooper and Cooper, Deans & Cargill, P.A. on brief, for appellants.

Russell F. Hilliard, David P. Slawsky, and Upton, Sanders & Smith on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and

**34**

POLLAK,[*] Senior District Judge.

POLLAK, District Judge.

The question presented by this appeal is whether the District Court for the District of New Hampshire was correct in dismissing, for lack of subject matter jurisdiction, a suit under 42 U.S.C. § 1983, brought by plaintiffs, as owners of the Mountain Valley Mall in North Conway, New Hampshire, against the Town of Conway ("Town"). In their § 1983 suit plaintiffs have alleged that the Town effectuated an uncompensated—and hence unconstitutional—"taking" of Mountain Valley Mall Boulevard, an access road connecting Mountain Valley Mall to U.S. 302, a major highway. After reviewing the procedural history of the challenges to the Town's action mounted by the plaintiffs prior to filing the § 1983 suit, the district court concluded that it lacked authority to entertain plaintiffs' suit. Specifically, the district court pointed out that before seeking relief in federal court, plaintiffs had initiated two law suits in the New Hampshire courts contesting the legality of the Town's action and had been unsuccessful in both. Viewing the § 1983 suit as an effort collaterally to undercut these state court decisions, the district court held that the *Rooker–Feldman* doctrine—pursuant to which "[l]ower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions," *Wang v. New Hampshire Board of Registration in Medicine,* 55 F.3d 698, 703 (1st Cir.1995)[1]—

[*] Of the Eastern District of Pennsylvania, sitting by designation.

1. The *Rooker–Feldman* doctrine is a distillation of two Supreme Court decisions: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

*Rooker* was a case that came before the Supreme Court twice. The first occasion was an attempt by plaintiffs in an Indiana state court action to seek Supreme Court review, by writ of error, of a decision of the Indiana Supreme Court affirming an Indiana circuit court judgment adverse to plaintiffs. The United States Supreme Court, speaking through Justice Van Devanter, dismissed the writ of error for the reason that the federal question urged by plaintiffs in support of the writ of error had not been "raised in any way prior to the judgment of affirmance in the [Indiana] Supreme Court.... All that appears is that after the judgment of affirmance the plaintiffs sought to raise the question by a petition for rehearing, which was denied without opinion. But that effort came too late.... Federal questions, like others, should be presented in an orderly way before judgment.... It is at least doubtful that the question is of any substance, but its tardy presentation renders further notice of it unnecessary." *Rooker v. Fidelity Trust Co.,* 261 U.S. 114, 117, 43 S.Ct. 288, 67 L.Ed. 556 (1923).

Plaintiffs then chose a new battleground, bringing a bill in equity in the federal district court for Indiana seeking a declaration that the judgment of the Indiana circuit court be declared void because in conflict with the contract clause and the Fourteenth Amendment. The district court dismissed the bill for lack of jurisdiction. The Supreme Court, again speaking through Justice Van Devanter, affirmed:

It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the State on an appeal by the plaintiffs. 191 Ind. 141, 131 N.E. 769. If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. *Elliott v. Peirsol,* 1 Pet. 328, 340, 7 L.Ed. 164; *Thompson v. Tolmie,* 2 Pet. 157, 169, 7 L.Ed. 381; *Voorhees v. Bank of United States,* 10 Pet. 449, 474, 9 L.Ed. 490; *Cornett v. Williams,* 20 Wall. 226, 249, 22 L.Ed. 254; *Ex parte Harding,* 120 U.S. 782, 7 S.Ct. 780, 30 L.Ed. 824. Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. Judicial Code, § 237, as amended September 6, 1919, c. 448 § 2, 39 Stat. 726. To do so would be an exercise of appellate jurisdic-

deprived it of jurisdiction to entertain plaintiffs' suit.

On appeal, plaintiffs contend that the district court misapplied *Rooker–Feldman.* Concluding that the district court reached the right result for the right reasons, we affirm.

## I.

The procedural events antecedent to the initiation of this § 1983 suit had their inception in the winter of 1992.[2] On March 10, 1992, at the annual Town Meeting of the Town of Conway, a resolution was adopted which, *inter alia,* declared certain roads, including "a portion of Mountain Valley Blvd., to Route 302 to become public roads pursuant to RSA 231:51 on final acceptance and recording of dedication by the Selectmen."[3] On April 22, 1992, the

tion. The jurisdiction possessed by the District Court is strictly original. *Rooker v. Fidelity Trust Co.,* 263 U.S. at 415–16, 44 S.Ct. 149.

*Feldman* was a consolidation of two cases wherein the District of Columbia Court of Appeals, which by statute has governance of bar admissions in the District of Columbia, had declined to waive a bar admission rule requiring graduation from a law school accredited by the American Bar Association. The two persons aggrieved brought suits in the District Court for the District of Columbia, challenging the District of Columbia Court of Appeals' rulings as contravening the Fifth Amendment and the Sherman Act. The district court dismissed both cases for lack of subject-matter jurisdiction, concluding that the correctness of those rulings could only be determined by the Supreme Court on direct review of the District of Columbia Court of Appeals (which by statute is deemed the "highest court of a State" within the meaning of 28 U.S.C. § 1257, governing the authority of the Supreme Court to review on certiorari state court decisions involving federal questions). The Court of Appeals for the District of Columbia Circuit affirmed the dismissal of the Sherman Act claims but reversed as to the constitutional claims on the ground that the challenged rulings of the District of Columbia Court of Appeals were "administrative" rather than "judicial" and hence that district court exercise of jurisdiction over the plaintiffs' constitutional claims would not trench on the Supreme Court's exclusive appellate authority to review decisions of the highest court of the District of Columbia. The Supreme Court, finding that the rulings of the District of Columbia Court of Appeals were "judicial," reversed. "Review of such determinations can be obtained only in this court. *See* 28 U.S.C. § 1257. *See also Atlantic Coast Line R. Co. v. Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)." *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303. The Supreme Court also held, however, that although the District Court had no jurisdiction to assess the constitutionality of the District of Columbia Court of Appeals' action in declining to waive the rule requiring graduation from an A.B.A.-accredited law school, the district court could exercise jurisdiction over a constitutional challenge to the rule itself. (Whether, as to the two bar admission candidates whose cases were before the Court, res judicata would preclude such a constitutional challenge was a question the Supreme Court "expressly [did] not reach," preferring to "leave that question to the District Court on remand." *Id.* at 487–88, 103 S.Ct. 1303.) (As to the relation of *Rooker–Feldman* to res judicata, *see Charles Alan Wright, Arthur R. Miller and Edward H. Cooper,* 18 *Federal Practice and Procedure* (1988 Supp.) 529; *see also Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996), *Guarino v. Larsen,* 11 F.3d 1151, 1157 (3d Cir.1993), and *Valenti v. Mitchell,* 962 F.2d 288, 296 (3d Cir.1992)).

2. The prior history of the lots which became the Mountain Valley Mall and of various adjacent lots is traced back to 1979 in meticulous detail in the July 26, 1996, opinion of Presiding Justice James D. O'Neill, III, in two consolidated cases captioned *Arliss Hill, William Johnson and Carol Hennum v. State of New Hampshire Department of Transportation, Town of Conway, et al.,* 95–E–0086, and *Arliss Hill, William Johnson and Carol Hennum v. Town of Conway and the Conway Planning Board,* 95–E–0066. The two consolidated cases are hereinafter cited as *Hill v. Town of Conway.* Justice O'Neill's opinion is referred to in the text *infra* at note 4. The opinion is unpublished.

3. The full text of R.S.A. 231:51, a New Hampshire statute, is as follows:

Dedicated Ways. Any street, lane or alley within this state which has been dedicated to public use by being drawn or shown upon a plan of lands platted by the owner, and the sale of lots in accordance with such plan, may be released and discharged from all public servitude by vote of the governing body of a city or town if such street, lane,

Board of Selectmen executed a Declaration of Taking reciting that a portion of roadway including Mountain Valley Mall Boulevard was "being taken for use as a town road under the authority of NHRSA 231:51" in order "to enhance traffic flow in the Town of Conway and enhance public safety and the health and welfare of the Town." On May 8, 1992, the Declaration of Taking was filed with the New Hampshire Board of Tax and Land Appeals. On April 12, 1993, the Board of Tax and Land Appeals ruled that plaintiffs were entitled to "no damages as a result of the taking."

Thereafter, plaintiffs filed two suits in the Carroll County Superior Court. The first suit—a statutorily prescribed mode of judicial review of the "no damages" ruling of the Board of Tax and Land Appeals— sought *de novo* reassessment of damages. The second suit challenged the legal efficacy of the Town of Conway's Declaration of Taking of Mountain Valley Boulevard, contending that there had been no dedication of the roadway and that the Declaration of Taking had not adequately described the roadway.

Both suits were ruled on by Justice James D. O'Neill, III, Presiding Justice of the Carroll County Superior Court. Justice O'Neill decided the second suit— the suit challenging the Declaration of Taking—first. On July 26, 1996, Justice O'Neill ruled that the Declaration of Taking was in compliance with the requirements of New Hampshire law.[4] On February 6, 1997, the New Hampshire Supreme Court summarily affirmed, and on April 22, 1997, the New Hampshire Supreme Court denied plaintiffs' motion for reconsideration.

On July 17, 1997, the Town of Conway moved for summary judgment in the damages reassessment suit. On September 23, 1997, Justice O'Neill granted the Town's motion for summary judgment. Key to the court's analysis was what the court had decided in the Declaration of Taking case which Justice O'Neill characterized as "a separate case involving the same parties disputing ownership to Mountain Valley Boulevard." In that case, wrote Justice O'Neill:

The Court held in pertinent part that Mountain Valley Boulevard was dedicated by the plaintiffs and accepted by the defendant. *See Hill, et al. v. Town of Conway*, 95–E–86, 66 at pp. 6, 13–15 (Carroll Cty.Super. Ct. 7/26/96). Specifically, the Court found that Mountain Valley Boulevard was platted as a road on a subdivision plan approved by the Conway Planning Board on August 16, 1990; said subdivision plan was recorded in the Carroll County Registry of Deeds; the Town accepted the platted road and easement on the subdivision plan by dedication; and the Town executed and recorded a dedication of Mountain Valley Boulevard as a public road. *Id.* at 29 (granting to [*sic*] the Town's requested Findings of Fact # 3–7). The Court specified that the plat plan in question constituted a subdivision within the meaning of RSA 672:14. Order at 29 (granting Town's requested Finding of Fact # 11, Ruling of Law # 1). The Court also ruled that by allowing the Town to perform winter road maintenance, the plaintiffs showed intent to dedicate Mountain Valley Boulevard to the Town of Conway. *Id.* (Ruling of Law # 7); *see also* Order at 6.

The Supreme Court summarily affirmed this Court's decision on February 6, 1997, then denied the plaintiffs' Motion to Reconsider on April 22, 1997. The Court finds that the issue(s) disputed in this case is identical to that previously litigated by the parties. The Court's previous ruling as to dedication

---

or alley has not been opened, built, or used for public travel within 20 years from such dedication.

**4.** *Hill v. Town of Conway,* cited *supra* note 2. Justice O'Neill's opinion also addressed a number of other concerns of the owners of Mountain Valley Mall not pertinent to the § 1983 suit.

and acceptance was of essential import to the first decision. Additionally, the plaintiffs had a full and fair opportunity to litigate the issue in the prior action. The issue was resolved finally on the merits. Accordingly, the plaintiffs are collaterally estopped from relitigating the issue of dedication and acceptance in the present case. *See Aranson v. Schroeder,* 140 N.H. 359, 368 [671 A.2d 1023] (1995) (setting forth elements of collateral estoppel).

The plaintiffs['] remaining argument is that they are entitled to compensation because they did not intend to effectuate a dedication. As referenced above, however, the court has found that the plaintiffs intended to dedicate Mountain Valley Boulevard. Notwithstanding that finding, RSA 231:51 and the decision of *Polizzo v. Town of Hampton,* 126 N.H. 398, 401 [494 A.2d 254] (1985), provide that roadway dedication can be accomplished by filing with a planning board a subdivision plan designating said roadway, and then selling lots in accordance with said plan. The filing of such a subdivision plan exhibits the applicant's intent to dedicate. *See 4 Anderson's American Law of Zoning* § 25.27, p. 385 ("the filing of a subdivision plat showing streets usually is construed as an offer to dedicate the land marked for such purpose"); *Harrington v. Manchester,* 76 N.H. 347, 349 [82 A. 716] (1912). It has been held that one who dedicates a roadway is "entitled to *no more than* nominal damages," *Walker v. Manchester,* 58 N.H. 438 (1878); *Harrington,* 76 N.H. at 348, 82 A. 716 (emphasis added), or "*no more than* the commissioners awarded." *Wilkins v. Manchester,* 74 N.H. 275 [67 A. 560] (1907) (emphasis added). In the present case, the Board of Land and Tax Appeals declined to award the plaintiffs damages; therefore, under the above principles, the plaintiffs are entitled to no further compensation. The plaintiffs['] reliance on *Dolan v. City of Tigard,* [512 U.S. 374] 114 S.Ct. 2309 [129 L.Ed.2d 304] (1994), is arguably misplaced. In *Dolan,* the petitioner was required, pursuant to express conditions, to dedicate a public greenway and bicycle path in order to obtain approval of a store expansion. No such conditions were demanded of the plaintiffs in this case; rather, a voluntary dedication and acceptance occurred. Therefore, the plaintiffs are not entitled to damages under either the law of New Hampshire or the *Dolan* decision.

On January 12, 1998, plaintiffs appealed to the Supreme Court of New Hampshire, presenting these questions:

a. Does the *Fifth Amendment* to the U.S. Constitution (applicable to New Hampshire through the *Fourteenth Amendment*), or the New Hampshire Constitution, Pt. 1, Art. 12, prohibit the taking of private roadway by a municipality's assertion of a dedication pursuant to N.H.R.S.A. 231:51, without just compensation?

b. Does the *Fifth Amendment* to the U.S. Constitution (applicable to New Hampshire through the *Fourteenth Amendment*), or the New Hampshire Constitution, Pt. 1, Art. 12, prohibit the taking of private roadway by a municipality's assertion of a dedication pursuant to N.H.R.S.A. 231:51 where dedication results as a matter of law, and without a showing that the required dedication was related either in nature or extent of [sic] the impact of the Plaintiffs' proposed development on the public? [5]

**5.** This question appears to be bottomed on *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), reliance on which Justice O'Neill had characterized as "arguably misplaced." In *Dolan* the United States Supreme Court reviewed a judgment of the Supreme Court of Oregon that upheld an order of the Tigard City Planning Commission granting the request of the owner of a plumbing and electric supply store for permission substantially to enlarge her store, but conditioning the grant on the owner's agreeing to dedicate approximately 10% of her 1.67 acre lot to provide for (1) enhanced effectiveness of

c. Does R.S.A. 231:51 deprive a landowner of all property rights retained under common law after a dedication, without any consideration to just compensation?

The Supreme Court of New Hampshire, on May 29, 1998, ruled: "Notice of Appeal is declined. *See* Rule 7(1)." [6]

Plaintiffs thereupon filed this § 1983 suit. In the first amended complaint three causes of action were alleged, each of them challenging the application of R.S.A. 231:51 as effectuating "an unconstitutional deprivation of Plaintiffs' private property without just compensation." The first cause of action—denominated "Taking Without Just Compensation"—contended that a dedication pursuant to R.S.A. 231:51 is a "taking" and that an uncompensated "taking" is unconstitutional. The second cause of action—denominated "Due Process— Lack of Pre-taking Determination"—contended that the dedication process embodied in R.S.A. 231:51 is constitutionally flawed because it does not call for "an individualized determination hearing to establish that the required dedication ·bears a rough proportionality to the impact of the proposed development," a contention evidently intended to renew plaintiffs' invocation in the·Superior Court of *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). The third cause of action—denominated "Due Process and Equal Protection of the Law— Lack of Post-taking Compensation Hearing and Appellate Review"—challenged R.S.A. 231:51 as entailing a denial of "established adjudicatory procedures, including both a hearing on the merits of the *de novo* assessment hearing or a hearing before the N.H. Supreme Court on appeal," with the result that "while a state remedy may have been adequate in theory, it was not available in practice, and by its unavailability denied the Plaintiffs equal protection of the law, and thus constitutes a taking of the Plaintiffs' property by the Town of Conway under color of law."

By way of relief the plaintiffs sought "declaratory relief that the post-deprivation process, including N.H. Supreme Court Rule 7(1), as applied to the Plaintiffs' property violates the Fourth, Fifth and Fourteenth Amendments to the United States Constitution," and also "a Judgment for the Plaintiffs awarding an amount of money damages that will fairly compensate said Plaintiffs for the taking of their real property."

---

a storm drainage system along an adjacent creek and (2) a pedestrian/bicycle path. The Planning Commission, and thereafter the Land Use Board of Appeals, found the required dedications to be reasonably calculated to address the augmented drainage and increased traffic which expansion of the store was expected to generate. The United States Supreme Court concluded that the agency findings sustained by the Oregon courts were conclusory, lacking in the specificity necessary to defeat petitioner's claim that the required dedication was an "unconstitutional condition" that constituted a "taking."

> We think a term such as "rough proportionality" best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development.

*Dolan,* 512 U.S. at 391, 114 S.Ct. 2309. Accordingly, the Court reversed the judgment of the Supreme Court of Oregon and remanded the case for further proceedings.

Justice O'Neill found plaintiffs' invocation of *Dolan* unpersuasive on the following basis: "In *Dolan,* the petitioner was required, pursuant to express conditions, to dedicate a public greenway and bicycle path in order to obtain approval of a store expansion. No such conditions were demanded of the plaintiffs in this case; rather, a voluntary dedication and acceptance occurred."

6. Rule 7 of the Rules of the Supreme Court of New Hampshire is captioned "Appeal from Lower Court Decision on the Merits." Paragraph (1) of Rule 7 provides, in pertinent part:

> The Supreme Court may, in its discretion, decline to accept an appeal, or any question therein, from a lower court after a decision on the merits, or may summarily dispose of such an appeal, or any question raised therein, as provided in rule 25 [Rule 25 is captioned "Summary Disposition"].

The defendant Town of Conway moved to dismiss, invoking the statute of limitations and res judicata.

The district court, invoking *Rooker–Feldman,* dismissed plaintiffs' suit for lack of subject-matter jurisdiction. From this judgment of dismissal plaintiffs have taken a timely appeal.

## II.

Plaintiffs, appellants in this court, contend that the district court's dismissal on *Rooker–Feldman* grounds was erroneous in two respects.

■ First, appellants note that *Feldman* only forecloses district court jurisdiction of claims that are "inextricably intertwined" with the claims adjudicated in a state court. *Feldman,* 460 U.S. at 483 n. 16, 486, 103 S.Ct. 1303. Appellants argue that "[n]one of the three constitutional claims before the District Court could possibly be considered to be inextricably interwoven with the Superior Court decision" rejecting appellants' claim for reassessment of damages—i.e., appellants' claim for "compensation" for the alleged "taking." But appellants' suggestion that the "issue actually addressed by the Superior Court in the 'compensation' case was not directly the issue of the constitutionality of the application of RSA 231:51" is hardly persuasive given the fact that appellants relied on *Dolan v. City of Tigard,* a "taking" case, before the Superior Court, and that Justice O'Neill expressly addressed appellants' reliance on *Dolan,* finding it "arguably misplaced" and concluding that "the plaintiffs are not entitled to damages under either the law of New Hampshire or the *Dolan* decision."

Justice Marshall, concurring in *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 23, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), provided important guidance to courts determining whether issues are "inextricably intertwined":

> As we have said, "[i]f the constitutional claims presented to a United States district court are inextricably intertwined" with the merits of a judgment rendered in state court, "then the district court is in essence being called upon to review the state-court decision. This the district court may not do." *District of Columbia Court of Appeals v. Feldman, supra,* 460 U.S. at 483–484, n. 16, 103 S.Ct. at 1315–16, n. 16. While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

The pertinence of Justice Marshall's analysis is made plain in a recent Eighth Circuit opinion (an opinion quoted by the district court in dismissing appellants' claims in the case at bar) assessing the impact of *Rooker–Feldman* in the context of condemnation litigation. In *Snider v. City of Excelsior Springs, Missouri,* 154 F.3d 809, 811–12 (1998), Judge Morris Arnold ruled as follows:

> *Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding. Deciding whether *Rooker–Feldman* bars the plaintiffs' federal suit therefore requires that we determine what the state court held and whether the relief that the plaintiffs requested in their federal action would void the state court's decision or would require us to determine that the decision was wrong.

> . . . . .

The plaintiffs' complaint alleges that the defendants violated federal and

state laws by their actions in the course of the condemnation proceeding. They prayed for damages, attorneys' fees, and "to have their time share interests reinstated in the Elms Hotel and Resort." The state court, however, had already determined the relevant damages from the condemnation and had extinguished whatever property interests the plaintiffs may have had. For the federal district court to order condemnation damages or to reinstate property interests would require it to determine that the state court had decided the condemnation matter wrongly: In other words, the relief for which the plaintiffs prayed would, if granted, effectively void the state court's judgment. Most importantly, the federal court would essentially be acting as an appeals court reviewing the state court judgment, which violates the *Rooker–Feldman* doctrine.

Appellants, in the face of a Superior Court determination that they "are not entitled to damages," have sought in their § 1983 suit a "Judgment ... awarding an amount of damages that will fairly compensate ... for the taking of their real property." In short, as Judge Arnold put the matter, "the relief for which the plaintiffs prayed would, if granted, effectively void the state court's judgment." As the district court properly determined, *Rooker–Feldman* precludes such an adjudication.

Appellants' second contention is captioned as follows: "The Decision by the N.H. Supreme Court to Decline the Appeal was Not a Final Judgment, Judicial in Nature, Rendered by the Highest State Court in which a Decision Could be Had." The thrust of appellants' argument is that "a declination of subject matter jurisdiction under *Rooker/Feldman* is only applicable to a final judgment or decree of the

N.H. Supreme Court," and that "[t]he declination by the N.H. Supreme Court under its Rule 7 was not such a final judgment" reviewable by the United States Supreme Court under 28 U.S.C. § 1257.

 Appellants are correct in arguing that the New Hampshire Supreme Court's Rule 7(1) disposition was not a judgment or decree reviewable by the United States Supreme Court.[7] But appellants are not correct in arguing that, within the New Hampshire judicial framework, *Rooker–Feldman* applies only to judgments of the New Hampshire Supreme Court, "the sole appellate court in the State of New Hampshire having jurisdiction over all courts of inferior jurisdiction." *Rooker–Feldman* is keyed to § 1257, and § 1257 contemplates United States Supreme Court review on certiorari of "[f]inal judgments or decrees rendered by the highest court of a State *in which a decision could be had* " (emphasis added). When a state supreme court exercises its discretion (whether vested by statute or rule) to decline to review a judgment of a lower state court, the judgment of that lower state court is then reviewable by the United States Supreme Court on certiorari pursuant to § 1257. *See, e.g., Abernathy v. Alabama*, 380 U.S. 447, 85 S.Ct. 1101, 14 L.Ed.2d 151 (1965)(certiorari to the Court of Appeals of Alabama). Moreover, in the unusual situation in which no appellate court has jurisdiction to review the trial court's judgment, the writ of certiorari of the United States Supreme Court runs to that trial court. *See, e.g., Thompson v. City of Louisville*, 362 U.S. 199, 202–03, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (certiorari to the Police Court of Louisville, Kentucky). In harmony with this settled practice under § 1257, "the *Rooker–Feldman* doctrine precludes review of lower state court decisions, just as it precludes review of the decisions of a state's highest court." *Port*

---

7. By contrast, the decision of the New Hampshire Supreme Court summarily affirming the first Superior Court decision (the decision in the "taking" case) probably would have been a reviewable "final judgment[ ]" within the meaning of § 1257 had the case encompassed a federal question.

*Authority PBA v. Port Authority of New York and New Jersey*, 973 F.2d 169, 178 (3d Cir.1992); *see also FOCUS v. Allegheny Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996); *cf. Keene Corp. v. Cass*, 908 F.2d 293, 297 (8th Cir.1990); *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n. 3 (9th Cir.1986); *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986).

In short, following the New Hampshire Supreme Court's Rule 7(1) discretionary declination to accept appellants' appeal from the Superior Court's ruling that "plaintiffs are not entitled to damages under the law of New Hampshire or the *Dolan* decision," appellants could have petitioned the United States Supreme Court for a writ of certiorari to the Superior Court, placing in issue the Superior Court's rejection of appellants' *Dolan*-based federal claim. But appellants did not pursue that course. Since the United States Supreme Court had exclusive appellate jurisdiction to review the final judgment of the Superior Court—"the highest court of [New Hampshire] in which a decision could be had"—*Rooker-Feldman* instructs that no federal court other than the United States Supreme Court had jurisdiction to entertain appellants' federal claim.[8]

### III.

"Although [28 U.S.C.] § 1331 and § 1343[(a)](3) appear to create federal court subject-matter jurisdiction for all § 1983 cases, there are a few situations where jurisdiction does not exist. The most important exception is that federal courts do not have jurisdiction pursuant to § 1983 to review the judgments and decisions of state courts." *Erwin Chemerinsky, Federal Jurisdiction* 423 (2d ed.1994).

The judgment of the district court is ***affirmed***.

---

8. Appellants' third cause of action encompasses, *inter alia,* what appears to be a contention that the practice of the New Hampshire Supreme Court, pursuant to Rule 7(1), of accepting certain appeals for disposition on the merits but declining to accept others—including, in the rejected category, appellants' appeal from the second Superior Court judgment—is unconstitutional, or is, at least, an important element of a "post-deprivation process" that is constitutionally flawed. See ¶¶ 64 and 65 of first amended complaint. But that contention, the precise contours of which are not easy to discern, has not been argued in appellants' brief on appeal and hence need not be addressed.

If appellants believed that the New Hampshire Supreme Court's practice under Rule 7(1)—which on its face seems to contemplate a discretionary case-selection process similar to the certiorari process of the United States Supreme Court and comparable processes in force in numerous state appellate courts—was unconstitutional, it was open to appellants to undertake to assert that federal claim by petitioning the New Hampshire Supreme Court to reconsider its Rule 7(1) declination of appellants' appeal from the second Superior Court judgment. And had the New Hampshire Supreme Court denied reconsideration, it would then have been open to appellants to petition the United States Supreme Court for

certiorari to address *two* federal constitutional claims asserted in the New Hampshire courts—the Rule 7(1) claim (which by hypothesis would not have arisen until the New Hampshire Supreme Court declined to accept appellants' appeal and would not have matured until that court denied reconsideration) as well as a claim predicated on *Dolan* (presented to and rejected by Justice O'Neill in the Superior Court). But, of course, appellants did not raise the Rule 7(1) claim in the New Hampshire Supreme Court, and therefore could not have petitioned for certiorari on that claim. Does the unavailability of United States Supreme Court review with respect to the Rule 7(1) claim make *Rooker–Feldman* inapplicable to that claim? The answer is "no," since the unavailability of United States Supreme Court review traces to appellants' non-pursuit of the claim:

> [T]he fact that we may not have jurisdiction to review a final state-court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States district court should have jurisdiction over the claims. By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court.

*Feldman,* 460 U.S. at 484 n. 16, 103 S.Ct. 1303.